STATE of Indiana, Appellant–
Defendant,

v.

Larry W. STAMPER, Appellee–
Plaintiff.

No. 72A04–0209–CR–467.

Court of Appeals of Indiana.

May 16, 2003.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Jason J. Pattison, Rogers & Dove, North Vernon, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

The State seized a garbage bag from Larry Stamper's property.[1] Using the material found in the garbage bag, the State secured a search warrant and searched Stamper's property. The State filed charges against Stamper. Stamper filed a Motion to Suppress the evidence obtained through the search warrant. The trial court granted Stamper's Motion to Suppress and the State appeals. We affirm.

### Issue

The State raises one issue for our review, which we restate as whether the trial court properly granted Stamper's Motion to Suppress.

### Facts and Procedural History

On the evening of September 19, 2001, Indiana State Police Detective Matthew Busick conducted surveillance of Stamper's residence. Detective Busick was familiar with Stamper because he had been involved in an arrest of Stamper a few months earlier. At approximately sundown, Detective Busick observed Stamper exit his home with a garbage bag in his hand. While Detective Busick was watching, Stamper placed the garbage bag at the bottom of the garbage pile some feet on his property near the end of his driveway. A "No Trespassing" sign was posted on Stamper's property near the garbage pile.

Approximately two hours later, Detective Busick retrieved the garbage bag that he had seen Stamper deposit at the bottom of the pile. Inside the garbage bag, Detective Busick found a burned hand-rolled marijuana cigarette and rolling paper. A field test on the substance found in the garbage bag proved positive for marijuana. Based on this information, Detective Busick applied for and obtained a search warrant for Stamper's property. Detective Busick executed the search warrant and uncovered a large quantity of marijuana and oxycontin on Stamper's property.

The State charged Stamper with dealing in a narcotic drug, a Class A felony, and dealing in marijuana and maintaining a common nuisance, both Class D felonies. Additionally, the State amended its charging information to include an habitual substance offender count. Stamper filed a Motion to Suppress addressed to the evidence found as a result of the search warrant. Stamper contended that the search warrant was issued without probable cause and was based on false information. The trial court conducted a hearing on Stamper's Motion to Suppress, at which Stamper testified that his sister's fiancé collected his garbage rather than any government-run garbage collection service. Additionally, he testified that his property is fenced in except for the stone area by the road where the gate is located and the garbage is collected. Finally, the trial court also heard evidence that Detective Busick had to enter Stamper's property to retrieve the garbage bag which was located approximately ten feet from the street.

1. We heard oral argument on this case on April 10, 2003, at the Inns of Court Meeting in Jeffersonville. We thank the attorneys for their capable advocacy and the Inns of Court for their gracious reception.

The trial court granted Stamper's Motion to Suppress and ordered suppressed all evidence recovered as a result of the search made of Stamper's property pursuant to the search warrant. This appeal ensued.

## Discussion and Decision

### I. Standard of Review

At the suppression hearing, the State had the burden of demonstrating the constitutionality of the measures it used to secure evidence. *State v. Glass,* 769 N.E.2d 639, 641 (Ind.Ct.App.2002), *trans. denied.* On appeal from the grant of a motion to suppress, the State appeals from a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. *State v. Estep,* 753 N.E.2d 22, 24–25 (Ind.Ct.App.2001). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* at 25. This court neither reweighs the evidence nor judges the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment. *Id.*

### II. Stamper's Motion to Suppress

The State contends that the trial court erred in granting Stamper's Motion to Suppress because Stamper had no reasonable expectation of privacy in a garbage bag left with other garbage bags near the road for collection. The State examines both the Fourth Amendment of the United States Constitution and the Indiana Constitution and states that the purpose of each is to protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures. The State argues that the search of Stamper's garbage bag did not offend either constitution.

### A. Fourth Amendment

The State argues that the search and seizure of Stamper's garbage bag violates his Fourth Amendment rights only if Stamper manifested a subjective expectation of privacy in the garbage bag that society accepts as objectively reasonable. Placing items of property inside a garbage bag and placing the garbage bag out for collection manifests an intention to abandon the property inside the garbage bag. *See United States v. Redmon,* 138 F.3d 1109, 1114 (7th Cir.1998), *cert. denied,* 525 U.S. 1066, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999) (defendant's garbage was abandoned when he moved it out of his garage and placed it for collection).

Stamper concedes that the search and seizure was constitutionally permissible under the Fourth Amendment. However, he contends that the search was not permissible under the Indiana Constitution.

### B. Indiana Constitution

The State contends that Stamper did not have a reasonable expectation of privacy under Article I, Section 11 of the Indiana Constitution, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The United States Constitution establishes a minimum level of protection to citizens of all states. A state is thus free as a matter of its own constitutional law to impose greater restrictions on police activity than those deemed minimal under federal law. *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The Indiana Constitution has unique vitali-

ty, even where its words parallel federal language. *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind.2002). We resolve Indiana constitutional claims by "examining the language of the text in the context of the history surrounding its drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Id.* (quoting *Indiana Gaming Comm'n v. Moseley*, 643 N.E.2d 296, 298 (Ind.1994)).

■ Indiana's founders left few clues about the formulation of Article I, Section 11. The 1816 constitutional convention adopted this section in remarkably short order with no recorded debate, in nearly the same words we have today. *Id.* We have previously held that Article I, Section 11 must be liberally construed to protect Hoosiers from unreasonable police activity in private areas of their lives. *Id.* (quoting *Brown v. State*, 653 N.E.2d 77 (Ind.1995) (warrantless search of defendant's car held unreasonable under Indiana Constitution)). Rather than looking to federal requirements such as warrants and probable cause when evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. *Id.* (citing *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999)).

The State directs our attention to two similar cases: *Moran v. State*, 644 N.E.2d 536 (Ind.1994), and *Bell v. State*, 626 N.E.2d 570 (Ind.Ct.App.1993), *trans. denied*. In *Moran*, our supreme court upheld the search and seizure of garbage left at the curb in front of Moran's house. The court observed that the police conducted themselves in the same manner as those who pick up the garbage, the police did not disturb Moran or his neighborhood, and *the police did not trespass onto Moran's property. Moran*, 644 N.E.2d at 541.

Therefore, the court held that the search was not unreasonable. *Id.*

In *Bell*, this court upheld a police search of Bell's garbage where Bell placed his garbage outside of the fenced-in area of his property and the police seized it without stepping onto his property. The court held that Bell had no reasonable expectation of privacy in the contents of the garbage bags:

> In the present case, Bell placed the garbage bags in question outside the fenced-in area of his property where they could be reached from the alley *without stepping onto Bell's property.* They appeared to be available for waste disposal pick-up. We hold that Bell had no reasonable expectation of privacy in the contents of the garbage bags and we find no error in the trial court's denial of Bell's motion to suppress.

*Bell*, 626 N.E.2d at 572 (emphasis added).

■ The State concedes that neither of these cases is factually identical to the present situation in that Detective Busick had to step onto Stamper's property to retrieve the garbage bags. The State argues that this is a distinction without consequence, contending that the holdings in *Moran* and *Bell* turned on the expectation of privacy rather than the real property ownership and therefore, the search and seizure in the present case should be considered reasonable as well.

Stamper contends that the distinction between *Moran* and *Bell* and the present case make this an unreasonable search. Stamper argues that Detective Busick's trespass onto his property and the fact that the garbage would not have been collected by a public trash collection service make this an unreasonable search. We agree.

In *Moran* and *Bell*, our supreme court and this court have held that coming onto

the property was the benchmark. As long as the police did not have to enter the property, the search was considered reasonable. *See Moran*, 644 N.E.2d at 541 ("Here, the police did not trespass upon the premises to get the bags."); *Bell*, 626 N.E.2d at 572 ("Bell placed the garbage bags in question outside the fenced-in area of his property where they could be reached from the alley without stepping onto Bell's property."). Here, Detective Busick stepped onto Stamper's property to retrieve the garbage bag.[2]

The State argues that Stamper had no reasonable expectation of privacy in the garbage bag placed near the street. However, establishing that a defendant had no reasonable expectation of privacy does not always end our analysis of the reasonableness of a search. In *Middleton v. State*, 714 N.E.2d 1099 (Ind.1999), our supreme court held that a police officer who observed drugs in the open, left the location of those drugs and returned to seize the drugs made an unreasonable search. *Id.* at 1103. In *Middleton*, a realtor was showing a probationary police officer a home. The officer had not yet been to the police academy. While inspecting the home, the officer observed what he believed to be marijuana. He stated that he was going to seize the marijuana, but the realtor told him he could not. He left the house and radioed for assistance. During the time he was outside, the back door to the house remained unlocked. Several po-

lice officers arrived within minutes and reentered the residence without the realtor's permission and without a search warrant.

The State charged the occupant of the bedroom where the marijuana was seized with possession of marijuana, visiting a common nuisance, and possession of paraphernalia. He moved to suppress the evidence obtained during the warrantless search. The trial court denied the motion and this court affirmed. Our supreme court reversed, holding that police officers may immediately seize items found in plain view that satisfy the conditions of *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), but if an officer leaves the residence reentry is not justified in the absence of a warrant, the consent of the owner, or some other exception to the warrant requirement. *Middleton*, 714 N.E.2d at 1103.[3]

In *Middleton*, the occupant of the bedroom where the marijuana was seized certainly had no reasonable expectation of privacy. The home was open for inspection by potential buyers and tours of the home were being given. However, merely having no reasonable expectation of privacy was not sufficient to hold the warrantless search reasonable.

Although *Middleton* is not exactly on point, it is important to note that our supreme court has not given free reign to police for warrantless searches nor have

---

**2.** The State argued at oral argument that the garbage bag was only ten feet from the street and that ten feet is inconsequential. We find this argument unconvincing. If ten feet is inconsequential, what distance is considered consequential? Fifteen feet? Twenty feet? Following *Moran* and *Bell,* we hold that it is the entering onto private property that determines whether the search is reasonable, not how many feet the officer had to traverse to reach the garbage bag.

**3.** Three conditions must exist to justify the warrantless seizure of evidence under the plain view doctrine: (1) the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself. *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

our courts held that the question begins and ends with the expectation of privacy. This is a question of when you can gather evidence and when you cannot.

We find it particularly disturbing that Detective Busick saw Stamper take his garbage out, then waited two hours before picking up the garbage bag. During this time, Detective Busick could have cordoned off the garbage and attempted to get a search warrant instead of performing a warrantless search.[4] *See Middleton*, 714 N.E.2d at 1103 (noting that the officers could have secured the area for the few minutes necessary to obtain a search warrant).[5]

In light of the facts in this case, we believe Stamper's expectation of privacy was reasonable. If we were to hold otherwise, police could search everyone's opaque garbage bags on their property without reason and thereby learn of their activities, associations, and beliefs. *See Hawaiki v. Tanaka,* 67 Haw. 658, 701 P.2d 1274, 1276 (1985). It is exactly this type of overbroad government intrusion that Article I, Section 11 of the Indiana Constitution was intended to prevent.

The fact that we hold that Stamper had a reasonable expectation of privacy in his trash bag located on his own property such that police had to enter his property to retrieve the bag does not mean that the police were powerless to search the trash bag. It simply means that, absent exigent circumstances, the police will need a search warrant based on probable cause. *See id.* at 1277.

*Conclusion*

The State has not shown that the trial court's ruling on Stamper's Motion to Suppress was contrary to law. Detective Busick had to enter Stamper's property and, in order to do that, he needed to obtain a search warrant. The granting of Stamper's Motion to Suppress is affirmed.

Affirmed.

KIRSCH and RILEY, JJ., concur.

---

4. At oral argument, the State conceded that Detective Busick would not have been able to obtain a search warrant to seize the garbage bag as they lacked the requisite probable cause. However, the fact that they could not have obtained a search warrant does not give police free reign to enter the premises of an individual and try to seize enough evidence to obtain a search warrant.

5. Although Stamper contends that the improbability that Detective Busick would have waited two hours before securing the garbage bag, along with other improbable facts, makes it seem like Detective Busick fabricated the entire search, we do not need to address these allegations.