STATE of Indiana, Appellant–Plaintiff,

v.

Gary HANLEY, Appellee–Defendant.

No. 67A01–0307–CR–236.

Court of Appeals of Indiana.

Feb. 4, 2004.

Transfer Denied April 14, 2004.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Jessie A. Cook, Terre Haute, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

The State appeals the trial court's grant of Gary Hanley's motion to suppress evidence collected from his home. The State raises four issues; however, because the State fails to argue the evidence was admissible under the Indiana Constitution, we affirm the trial court on that basis.

### FACTS AND PROCEDURAL HISTORY

On January 11, 2002, Indiana State Troopers Dennis Wade and Michael

O'Rourke went to Hanley's home to see if he would voluntarily discuss why there were reports of drug activity at his residence.[1] The troopers approached the front door of Hanley's residence, and Hanley directed them to a side door. As they approached the side door, Trooper Wade smelled marijuana. When Hanley opened the door, the troopers could smell a "very strong odor of burnt and raw marijuana." (Tr. at 21.)

Trooper Wade told Hanley they were there to discuss drug activity, and Trooper O'Rourke asked if they could step inside. Hanley asked if they had a search warrant, and because they did not, Hanley told them they could not enter his house. Nevertheless, the troopers entered the house, announcing they had probable cause to enter because they smelled marijuana and believed he possessed marijuana.

Once inside, the troopers asked if anyone else was in the house. Hanley reported his girlfriend was there, and the troopers asked her to come to the kitchen. Trooper O'Rourke contacted the prosecuting attorney and left to get a search warrant. Trooper Wade remained in the residence to prevent the destruction of evidence. He required Hanley and his girlfriend to remain in the kitchen with him until Trooper O'Rourke returned with the search warrant an hour and a half later.[2] When the house was searched, officers found methamphetamine, marijuana, psychedelic mushrooms, Tylenol with codeine, and diazepam.

On March 28, 2002, the State charged Hanley with dealing in methamphetamine, a Class A felony;[3] dealing in marijuana, a Class D felony;[4] dealing in a Schedule I, II, or III controlled substance, a Class B felony;[5] dealing in a Schedule III controlled substance, a Class B felony;[6] possession of a Schedule IV controlled substance, a Class D felony;[7] and possession of marijuana, a Class A misdemeanor.[8]

On December 2, 2002, Hanley filed a motion to suppress the evidence collected from his home. The trial court conducted a hearing and both parties filed briefs. The trial court granted Hanley's motion in an order that provided, with formal parts omitted:

> The case law consistently held that the Fourth Amendment prohibits the police from making warrantless and nonconsensual entry into a suspect's home without clearly articulated exigent circumstances. The smell of marijuana alone, after a legitimate stop, allowed law enforcement to search a vehicle in *Hawkins v. State* [*State v. Hawkins*] (Ind.Ct.App.2002) 766 N.E.2d 749, however, different criteria is involved when a man's home is the subject of a warrantless and nonconsensual entry. The Fourth Amendment has drawn a firm

---

1. This procedure is commonly referred to as a "knock and talk." (App. at 16.)

2. Trooper Wade claims they stayed in the house because it was very cold outside that evening and because he was afraid that someone else might be hiding in the house who would destroy contraband if he took Hanley and his girlfriend outside the house.

   At some point while Trooper O'Rourke was gone, Trooper Wade heard a noise in the back of the house and conducted a "protective sweep" of the first floor. During his sweep,

he saw no contraband or people, but he did find a television turned on.

3. Ind.Code § 35–48–4–1.

4. Ind.Code § 35–48–4–10.

5. Ind.Code § 35–48–4–2.

6. Ind.Code § 35–48–4–2.

7. Ind.Code § 35–48–4–7.

8. Ind.Code § 35–48–4–11.

line at the entrance to the house; a threshold that cannot reasonably be crossed without a warrant.

The evidence in this case was obtained in violation of Mr. Hanley's right to be free from unreasonable search and seizure. The Court finds that the inevitable discovery exception under the Indiana Constitution is not applicable and further finds that the search warrant later issued was defective.

Therefore, the Court grants the Motion to Suppress filed by defendant herein.

(Appellant's App. at 67.) The State filed a motion to reconsider, which the trial court denied.

## DISCUSSION AND DECISION

■ When a defendant challenges the admissibility of evidence based on a violation of the federal or state constitution, the State bears the burden of proving the evidence was admissible. *See Edwards v. State*, 759 N.E.2d 626, 630 (Ind. 2001) (discussing admissibility under the Fourth Amendment of evidence gathered by warrantless search). Because the State is appealing a negative judgment, we may reverse only if the evidence is without conflict and leads to the conclusion opposite that reached by the trial court. *State v. Friedel*, 714 N.E.2d 1231, 1235 (Ind.Ct.App.1999). We may consider only the evidence most favorable to the judgment, and we may not reweigh the evidence or judge the credibility of the witnesses. *Id.*

Before the trial court, Hanley argued the evidence should be suppressed under both the Fourth Amendment to the federal constitution and Article 1, section 11 of the Indiana Constitution. Accordingly, the State had the burden of demonstrating the evidence was admissible under both our federal and state constitutions. *See, e.g., Edwards*, 759 N.E.2d at 630. The trial court's order granting Hanley's motion to suppress provides the actions of Troopers Wade and O'Rourke violated "Hanley's right to be free of unreasonable search and seizure" and "the inevitable discovery exception under the Indiana Constitution is not applicable." (App. at 67.) This language indicates the trial court found the evidence inadmissible under the Indiana Constitution.

■ In its appellant's brief, the State argues the trial court erred in granting Hanley's motion to suppress under *only* the Fourth Amendment. We have scoured the State's brief and found no reference to the Indiana Constitution, much less the "separate legal analysis" that is required to argue admissibility under our state constitution.[9] *Friedel*, 714 N.E.2d at 1243. Therefore, the State has waived any argument regarding Article 1, Section 11 of the Indiana Constitution. *See id.* (holding State "failed to preserve any argument it might have under the Indiana Constitution").

■ The protection provided by the Fourth Amendment is the minimum amount of protection a state may provide for its citizens. *See State v. Stamper*, 788 N.E.2d 862, 864 (Ind.Ct.App.2003), *trans. denied.* However, states are permitted to provide additional protection based upon their state constitutions. *Id. See also*

9. In its reply brief, the State argues the "knock and talk" procedure does not violate the Indiana Constitution. However, it is axiomatic that a party may not raise new issues in its reply brief. *See, e.g., Friedel*, 714 N.E.2d at 1243. Moreover, even if we addressed this argument despite the waiver, the State would have established only that the troopers could be at Hanley's door. Given the events that transpired thereafter, the State would be far from proving the evidence was admissible under the Indiana Constitution.

*State v. Gerschoffer,* 763 N.E.2d 960, 965 (Ind.2002) ("The Indiana Constitution has unique vitality, even where its words parallel federal language."). In fact, searches or seizures have violated the Indiana Constitution when they did not violate the federal constitution. *See, e.g., Stamper,* 788 N.E.2d at 867 (holding search and seizure violated Indiana Constitution, even though Stamper conceded the search was permissible under the Fourth Amendment).

Accordingly, even if we were to agree with the State that the evidence was admissible under the federal constitution, the State failed to carry its burden of proving the trial court erred by holding the evidence was inadmissible under our state constitution. *See Gerschoffer,* 763 N.E.2d at 965 ("[W]hen evaluating Section 11 claims, we place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable."); *Friedel,* 714 N.E.2d at 1243 ("It is the State's burden to demonstrate the constitutionality of the search and by failing to raise the argument that the search was reasonable under the Indiana Constitution, the State has not met its burden."). Therefore, we affirm.

Affirmed.

BARNES, J., and DARDEN, J., concur.