Patrick **LITCHFIELD** and Susan Litchfield, Appellants–Defendants,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 50A03–0307–CR–270.

Court of Appeals of Indiana.

May 19, 2004.

Transfer Granted Aug. 27, 2004.

Tom A. Black, June E. Bules, Plymouth, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants Patrick Litchfield and Susan Litchfield (collectively "the Litchfields") were charged with Possession of Marijuana, a Class D felony,[1] and Maintaining a Common Nuisance, a Class D felony.[2] They bring this interlocutory appeal from the denial of their motion to suppress evidence obtained through a warrantless search of their trash and subsequent search of their residence, which was pursuant to a search warrant. We affirm.

### Issue

The Litchfields raise two issues on appeal, which we consolidate and restate as whether the trial court erroneously denied their motion to suppress because the warrantless trash search was unreasonable.

### Facts and Procedural History

In 2002, the United States Drug Enforcement Administration ("DEA") provided the Indiana State Police ("ISP") a list of addresses to which shipments were sent from Worm's Way, a gardening supply store. For the past three years, the DEA provided the ISP shipping information subpoenaed from companies that advertise in *High Times,* "a marijuana growers magazine"; Worm's Way is one such advertiser. Tr. at 4–5.

On July 5 and 22, 2002, ISP Trooper Daniel Ringer ("Trooper Ringer") went to 3100 Plymouth–LaPorte Trail, one of the addresses on the list provided by the DEA, and seized the trash contained in two barrels at the edge of the property, owned by the Litchfields. The trash barrels were approximately fifteen to twenty-five feet from the edge of the pavement, and approximately 175 feet from the nearest corner of the Litchfields' house. These containers were always kept at the same general area, which is where the trash collection service picked up the Litchfields' trash.

---

1. Ind.Code § 35–48–4–11.

2. Ind.Code § 35–48–4–13.

Upon examination of the trash collected on July 5 and July 22, Trooper Ringer discovered plant stems, seeds, and leaves that field-tested positive for marijuana. In the trash seized on July 22, Trooper Ringer also discovered burnt rolling papers and hemp rolling paper packaging. Based on this evidence, Trooper Ringer prepared a search warrant, which was signed by Marshall County Superior Court Judge Robert Bowen on July 23, 2002. Police executed the search warrant on July 24, 2002, and discovered fifty-one marijuana plants on the back deck of the Litchfields' residence.

On August 5, 2002, the State charged the Litchfields with possession of marijuana, a Class D felony, and maintaining a common nuisance, a Class D felony. The Litchfields filed a motion to suppress the evidence obtained by police during the trash searches and the subsequent search of their residence. On May 22, 2003, the trial court denied the Litchfields' motion. On June 19, 2003, the trial court certified the denial of the Litchfields' motion for interlocutory appeal. The Court of Appeals accepted jurisdiction on August 27, 2003.

## Discussion and Decision

### I. Standard of Review

The standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind.1997). We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Id.* In this review, we do not reweigh the evidence and consider conflicting evidence most favorably to the trial court's ruling. *Id.* However, this review is different from oth-

er sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Caudle v. State,* 749 N.E.2d 616, 618 (Ind.Ct.App.2001), *trans. denied.*

### II. Analysis

The Litchfields argue that the warrantless police search of their trash was unreasonable, and therefore violated Article I, Section 11 of the Indiana Constitution.[3] We disagree.

As an initial matter, we address the Litchfields' argument that the trial court improperly placed the burden on them to demonstrate that the search was unreasonable. Indeed, at the beginning of the suppression hearing, the trial court indicated that because a search warrant was issued, the burden of proof rested with the Litchfields to show that there was no probable cause. However, because the issuance of the search warrant was premised on the warrantless search of the Litchfields' trash, the burden remained with the State to show that the trash search was reasonable under a totality of the circumstances. *State v. Stamper,* 788 N.E.2d 862, 865 (Ind.Ct.App.2003), *trans. denied.*

Here, the trial court did not include any findings or conclusions in its order denying the motion to suppress. Thus, it is unclear whether the trial court reversed its earlier statement and applied the appropriate standard. We presume the trial court followed the law. *Moran v. State,* 622 N.E.2d 157, 159 (Ind.1993). In any event, the reasonableness of a warrantless search is a question of law, which this court reviews de novo. *State v. Moss–Dwyer,* 686 N.E.2d 109, 110 (Ind.1997).[4]

---

3. The Litchfields raise no argument that the trash search violated the Fourth Amendment, and thus we only consider the Litchfields' argument under the Indiana Constitution.

4. Further, the only factual dispute between the Litchfields and the State concerns the distance of the trash containers from the street, which we find to be a non-issue in our analysis. A forty-foot right-of-way extends

In turning to the Litchfields' substantive argument, we note that our supreme court addressed trash searches under the Indiana Constitution in *Moran v. State*, 644 N.E.2d 536 (Ind.1994). There, the Court rejected the two-prong test announced by the United States Supreme Court in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), when analyzing the reasonableness of such searches under the Indiana Constitution. *Moran*, 644 N.E.2d at 540. The *Katz* test focuses upon the individual and societal expectation of privacy in determining whether a search is reasonable.[5] *Id.* Instead, our supreme court determined that the reasonableness of trash searches should be determined based on a totality of the circumstances. *Id.* at 541. In so doing, the supreme court recognized that "Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." *Id.* Nevertheless, the court concluded that the curbside search of Moran's trash, which (1) was reached without trespassing on Moran's property, (2) was performed at a time when neighbors would not be disturbed, and (3) was performed in a manner consistent with typical trash collection did not violate Article 1, Section 11. *Id.*

The Litchfields direct us to *State v. Stamper*, 788 N.E.2d 862 (Ind.Ct.App. 2003), *trans. denied,* which was decided by a different panel of this court. In *Stamp-*

*er,* the Court of Appeals determined that an unwarranted search of trash, which was not placed out for collection, and which was reached by trespassing onto Stamper's property, was unreasonable and suppressed the results of the search. The *Stamper* court held that "it is the entering onto private property that determines whether the search is reasonable, not how many feet the officer had to traverse to reach the garbage bag." *Stamper,* 788 N.E.2d at 866 n. 2.

■ We decline to follow *Stamper* to the extent that *Stamper* appears to have created a bright-line test for determining reasonableness.[6] Instead, we will determine the reasonableness of the trash search based on the totality of the circumstances, consistent with *Moran*.

Here, while Trooper Ringer did trespass onto the Litchfields' property to seize the trash bags, he did so in a manner consistent with the Litchfields' regular trash collection service and at times that would not bring his police activities to the neighbors' attention. Further, the containers were more than fifty yards away from the residence in an unfenced area of the front yard, shielded from view from the residence by several trees. *See* Def.'s Ex. E. These facts demonstrate that the area where the trash containers were located was not curtilage, i.e. connected with "the conduct of family affairs and for carrying

---

across Plymouth–LaPorte Trail onto the Litchfields' property. Plymouth–LaPorte Trail is twenty-two feet wide. Thus, regardless of whether the containers were fifteen or twenty-five feet from the pavement, Officer Ringer necessarily trespassed beyond the right-of-way by at least six feet, as the right-of-way only extended nine feet from the edge of the pavement.

5. While the Court expressly declined to apply the *Katz* test to Article 1, Section 11 analysis, the Court noted a lesser expectation of priva-

cy citizens generally have towards their trash. *Id.* at 541 ("It has often been said if you do not want others to know what you drink, don't put empties in the trash.").

6. Nevertheless, the search in *Stamper* was unreasonable under the totality of the circumstances, given the police trespass *and* "the fact that the garbage would not have been collected by a public trash collection service." *Stamper,* 788 N.E.2d at 865.

on domestic purposes." *Fox v. State*, 179 Ind.App. 267, 384 N.E.2d 1159, 1163 (1979). Taken together, we do not find the trash search unreasonable under the totality of the circumstances. Accordingly, the trial court did not err in denying the Litchfields' motion to suppress.

Affirmed.

DARDEN, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the trial court did not err in denying the Litchfields's motion to suppress. In its opinion, the majority relies primarily on *Moran v. State*, 644 N.E.2d 536 (Ind.1994), *reh'g denied*, while rejecting *State v. Stamper*, 788 N.E.2d 862 (Ind.Ct.App.2003), *trans. denied*, as incorrect for having "created a bright-line test." Op. at 716.

It is well settled that the purpose of Article 1, § 11 of the Indiana Constitution is to protect from unreasonable police activity, those areas of life that Hoosiers regard as private. *See Moran*, 644 N.E.2d at 540. Thus, the provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizures. *See id.* In *Moran*, our supreme court upheld the search and seizure of garbage left at the curb in front of Moran's house. The supreme court observed that: (1) the police conducted themselves in the same manner as those who pick up the garbage, (2) the police did not disturb Moran or his neighborhood, and (3) *the police did not trespass into Moran's property*. *Moran*, 644 N.E.2d at 541. (Emphasis added).

Subsequently, in *Bell v. State*, 626 N.E.2d 570 (Ind.Ct.App.1993), *trans. denied*, an intermediate decision between *Moran* and *Stamper*, we upheld a police search of Bell's garbage where Bell placed his trash outside of the fenced-in area of his property and the police seized it *without stepping onto his property*. *Id.* at 572. (Emphasis added).

Analyzing the facts in *Stamper* using the *Moran* test, we held that Stamper had a reasonable expectation of privacy in his trash bag located on his own property. After reviewing the facts in *Stamper*, we were particularly concerned that: (1) the police officer trespassed onto Stamper's property, and (2) the police officer waited two hours after Stamper took out his trash before picking up the garbage bag, during which the officer could have attempted to obtain a search warrant. *Stamper*, 788 N.E.2d at 866–67.

We further clarified in *Stamper* that "[i]n *Moran* and *Bell*, our supreme court and this court have held that coming onto the property was the benchmark. As long as the police did not have to enter the property, the search was considered reasonable." *See Stamper*, 788 N.E.2d at 866. Our supreme court, by denying transfer in both *Bell* and *Stamper*, implicitly granted its approval of our characterization of the weight afforded to the *Moran* factors. To hold otherwise would result in police officers searching everyone's garbage bags on their property without reason and thereby learning of a person's activities, associations, and beliefs. *See id.* at 867 (*quoting State v. Tanaka*, 67 Haw. 658, 701 P.2d 1274, 1276 (1985)). It is exactly this type of overbroad government intrusion that Article I, § 11 of the Indiana Constitution was intended to prevent. *See id.*

Here, our review of the record reveals that not only had the Litchfields contracted with a private waste collection service company for the removal of their garbage, Trooper Ringer clearly trespassed onto

the Litchfields's property to seize the trash bags. As such, I find that the Litchfields's expectation of privacy was reasonable, and thus, the trial court erred by denying their motion to suppress.

Furthermore, the majority appears to curtail the *Moran* decision by introducing a new element to the test. In its analysis, the majority, after describing the area where the trash containers were held, concluded that "[t]hese facts demonstrate that the area where the trash containers were located was not curtilage, *i.e.*[,] connected with 'the conduct of family affairs and for carrying on domestic purposes.'" Op. at 717. Although the element of "curtilage" is frequently discussed under a Fourth Amendment analysis, a claim under Article I, § 11 of the Indiana Constitution is analyzed independent of federal law. *See, e.g., California v. Greenwood*, 486 U.S. 35, 39–43, 108 S.Ct. 1625, 1628–30, 100 L.Ed.2d 30 (1988); *U.S. v. Shanks*, 97 F.3d 977, 979–80 (7th Cir.1996), *cert. denied* 519 U.S. 1135, 117 S.Ct. 1002, 136 L.Ed.2d 881. To date, no reported Indiana cases have made a distinction between the curtilage of someone's domain and other property for the purpose of the trespassing requirement under *Moran*. In its adoption of this distinction, the majority represents a sweeping change to, and in my opinion an unnecessary deterioration of, our supreme court's liberal interpretation of Article I, § 11 of the Indiana Constitution.