Patrick **LITCHFIELD** and Susan May Litchfield, Appellants (Defendants below),

v.

**STATE of Indiana, Appellee** (Plaintiff below).

No. 50S03–0408–CR–382.

Supreme Court of Indiana.

March 24, 2005.

Tom A. Black, June E. Bules, Plymouth, IN, Attorneys for Appellants.

Steve Carter, Attorney General, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

We hold that a search of trash recovered from the place where it is left for collection is permissible under the Indiana Constitution, but only if the investigating officials have an articulable basis justifying reasonable suspicion that the subjects of the search have engaged in violations of law that might reasonably lead to evidence in the trash.

### Factual and Procedural Background

Beginning in approximately 1999, the federal Drug Enforcement Administration had been providing the Indiana State Police with information subpoenaed from companies that advertised in *High Times,* a publication for marijuana growers. In the summer of 2002, the DEA supplied a list of Indiana addresses that had received shipments from Worm's Way, a gardening supply store that was among the subpoenaed advertisers. Among the addresses was the Litchfields' home in rural Marshall County. On July 5, 2002, and July 22, 2002, Indiana State Police troopers Daniel Ringer and Chad Larsh went to the address where they found trash barrels in the same general area where the collection service normally picked up the trash and where the containers were routinely kept. The barrels were located on the Litchfields' property approximately fifteen to twenty-five feet from the edge of the pave-

ment, and approximately 175 feet from the nearest corner of the Litchfields' house.

On both occasions, the troopers entered onto the property and removed several garbage bags. A search of the Litchfields' trash revealed plant stems, seeds, and leaves that tested positive for marijuana. The bags seized on July 22 also contained burnt rolling papers and hemp rolling paper packaging. Based on this evidence, Ringer prepared and obtained a warrant to search the Litchfields' home. Police executed the warrant on July 24, and discovered fifty-one marijuana plants growing on the back deck of the Litchfields' home.

The Litchfields were charged with possession of marijuana and maintaining a common nuisance. The trial court denied their pretrial motion to suppress the evidence obtained from the searches of their garbage and the subsequent search of their home. The Court of Appeals affirmed. *Litchfield v. State*, 808 N.E.2d 713, 714 (Ind.Ct.App.2004). We granted transfer. *Litchfield v. State*, 822 N.E.2d 973 (Ind.2004).

### The Search of Trash

■ The standard of appellate review of a trial court's ruling on a motion to suppress is similar to other sufficiency issues. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). We determine whether substantial evidence of probative value exists to support the trial court's ruling. *Id.* We do not reweigh the evidence and consider conflicting evidence most favorably to the trial court's ruling. *Id.*

#### A. *Fourth Amendment Doctrine*

■■ Searches of garbage are generally permissible under the Fourth Amendment to the Federal Constitution. Since *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the reasonableness of a search under the Fourth Amendment has turned on whether the subject of the search has an expectation of privacy and if so whether that subjective expectation is reasonable judged by the objective criterion of the views of society as a whole. *Id.* at 361, 88 S.Ct. 507 (Harlan, J., concurring). In *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court upheld the warrantless search of the defendant's garbage left at the curb for pickup. The Court reasoned that because the garbage was easily accessible to the public, the defendant did not have a reasonable expectation of its privacy. Federal courts have also upheld the warrantless search of garbage located on a resident's private property, focusing on the objective reasonableness of an expectation of privacy in the garbage rather than its location. Thus, in *United States v. Kramer*, 711 F.2d 789, 797 (7th Cir.1983), a warrantless search of the defendant's garbage was upheld where the garbage was located inside a low fence enclosing the defendant's yard. The court reasoned that the garbage had been abandoned and exposed to the public and the officers who seized the garbage did not threaten the peace and quiet of the defendant's home or interfere with his trash disposal routine. In *United States v. Hedrick*, 922 F.2d 396 (7th Cir.1991), the court sustained the search of trash located in the defendant's driveway eighteen feet from the sidewalk. The court took the view that it was common knowledge that members of the public often sort though others' garbage. As a result, "an expectation of privacy may be objectively unreasonable because of the common practice of scavengers, snoops, and other members of the public in sorting through garbage. In other words, garbage placed where it is not only accessible to the public but likely to be viewed by the public is 'knowingly exposed' to the public

for Fourth Amendment purposes." *Id.* at 400.

A majority of states follow federal doctrine and hold that their state constitutions permit a warrantless search of trash that has been left out for collection based on a lack of a reasonable expectation of privacy.[1] As the Supreme Court of Maryland explained, "the law that has emerged since *Greenwood* is essentially the same as it was before that case was decided, although, as a general rule, it is based less on the property concept of abandonment than on the conclusion that, by depositing the trash in a place accessible to the public, for collection, the depositor has relinquished any reasonable expectation of privacy." *State v. Sampson,* 362 Md. 438, 765 A.2d 629, 634 (2001). Some states have rejected this view and have found trash searches violative of either the Fourth Amendment or their state constitutions. Most states reaching this conclusion have based it, contrary to *Greenwood,* on the view that a person has a reasonable expectation of privacy in garbage placed out for collection.[2]

Recognizing that *Greenwood* forecloses any claim under the Fourth Amendment, the Litchfields do not challenge the searches of their trash under the Federal Constitution, but ask us to exclude the evidence as the product of a search and seizure in violation of the Indiana Constitution.

### B. "Reasonableness" of a Search under the Indiana Constitution

■ The Litchfields argue that the warrantless search of their trash was unreasonable and therefore violated Article I, Section 11 of the Indiana Constitution. Article I, Section 11 reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Although this language tracks the Fourth Amendment verbatim, Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure. The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Moran v. State,* 644 N.E.2d 536, 539 (Ind.1994). We have not elaborated on the methodology of evaluating reasonableness beyond the directive in *Moran* to consider the "totality of the

---

1. *See, e.g., Smith v. State* 510 P.2d 793, 797 (Alaska 1973); *Rikard v. State,* 354 Ark. 345, 123 S.W.3d 114, 119 (2003); *People v. Hillman,* 834 P.2d 1271, 1277 (Colo.1992); *State v. DeFusco,* 224 Conn. 627, 620 A.2d 746, 751 (1993); *Lirousa v. State,* 200 Ga.App. 475, 408 S.E.2d 436, 437 (1991); *State v. McCall,* 135 Idaho 885, 26 P.3d 1222, 1223 (2001); *State v. Henderson,* 435 N.W.2d 394, 396 (Iowa Ct.App.1988); *State v. Alexander,* 26 Kan. App.2d 192, 981 P.2d 761, 766 (1999); *State v. Lambertus,* 482 So.2d 812, 814 (La.Ct.App. 1986); *State v. Texel,* 230 Neb. 810, 433 N.W.2d 541, 543 (1989); *State v. Carriere,* 545 N.W.2d 773, 776 (N.D.1996); *State v. Brown,* 20 Ohio App.3d 36, 484 N.E.2d 215, 217

(1984); *Cooks v. State,* 699 P.2d 653, 656 (Okla.Crim.App.1985); *Levario v. State,* 964 S.W.2d 290, 296 (Tex.App.1997); *State v. Jackson,* 937 P.2d 545, 549 (Utah Ct.App. 1997); *State v. Stevens,* 123 Wis.2d 303, 367 N.W.2d 788, 796 (1985); *Croker v. State,* 477 P.2d 122, 125 (Wyo.1970).

2. *See State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274, 1276–77 (1985); *State v. Goss,* 150 N.H. 46, 834 A.2d 316, 319 (2003); *State v. Rhodes,* 151 N.C.App. 208, 565 S.E.2d 266, 271 (2002); *State v. Morris,* 165 Vt. 111, 680 A.2d 90, 94–95 (1996).

circumstances." Specifically, we have not explicitly addressed whether "reasonableness" is to be evaluated from the perspective of the investigating officer (in this case, Trooper Ringer), or the subject of the search (the Litchfields), or both.

We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. One factor that may render a search unreasonable is an arbitrary selection of the subject. Thus, we have permitted roadblocks for the purpose of testing for impaired drivers, but only under procedures that assure that no individual is subject to arbitrary selection. *State v. Gerschoffer,* 763 N.E.2d 960, 966 (Ind.2002); *compare Mich. Dep't of State Police v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (same under Fourth Amendment). We have also upheld legislation requiring motorists to use seat belts, but we have warned that stopping vehicles to inspect for violations is not permissible without an individualized basis to suspect noncompliance. *Baldwin v. Reagan,* 715 N.E.2d 332, 334 (Ind.1999). In both cases we were dealing with a seizure of the person, but the intrusion on the citizen was relatively minor—a brief stop of an automobile. And in both cases the scope of the permitted inquiry is limited, in one case to driving while intoxicated and in the other to seat belt use. In each case we nonetheless required either articulable individualized suspicion or a process designed to prevent officers from indiscriminate selection of those to be searched.

Even when officers have some indication of potential criminal activity, we have balanced it against a concern for excessive discretion in selection of a subject. In *State v. Bulington,* 802 N.E.2d 435 (Ind. 2004), officers who stopped the driver of a vehicle suspected of methamphetamine manufacture based on purchases of packages of a known methamphetamine precursor did not have enough facts for individualized suspicion of criminal activity. The majority found the seizure unreasonable, concluding that if such a stop were allowed, the police would be given too much latitude to exercise arbitrary discretion. *Id.* at 440.

Our explanation of reasonableness in other contexts has focused on both the degree of intrusion or indignity visited upon the citizen and the constraints on the detaining officer. Random searches have been sustained in at least one circumstance. In *Linke v. Northwestern Sch. Corp.,* 763 N.E.2d 972, 985 (Ind.2002), random drug testing of middle and high school students was held to be reasonable under Article I, Section 11. Although those tested were limited to students who drove to school or participated in athletics or a number of other activities, the majority did not rely on that restriction in sustaining the policy. Rather, the majority observed that a court should "weigh the nature of the privacy interest upon which the search intrudes, the character of the intrusion that is complained of, and the nature and immediacy of the governmental concern to determine whether the Policy is reasonable under the totality of these circumstances." *Id.* at 979 (citing *Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 660, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)). This explicitly added to the calculus the factor of the severity of the law enforcement need in addition to the degree of the intrusion. However, the degree of intrusion may render a search unreasonable, even where law enforcement needs are obviously present. In *Edwards v. State,* 759 N.E.2d 626, 630 (Ind.2001), we focused entirely on the degree of intrusion on the citizen and lack of individualized suspicion: "to the extent a warrantless strip search of

a misdemeanor arrestee is conducted on the basis of jail security, the indignity and personal invasion necessarily accompanying a strip search is simply not reasonable without the reasonable suspicion that weapons or contraband may be introduced into the jail."

Finally, if a violation of law is established, not merely suspected, a seizure has been upheld, even if the violation is quite minor. Thus, in *Mitchell v. State*, 745 N.E.2d 775, 787 (Ind.2001), we found "nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the motorist, to nevertheless respond to an observed traffic violation." The Court held that it was "not unreasonable for a motorist who commits a traffic law violation to be subject to accountability" even if the officer was motivated by "furthering an unrelated criminal investigation." *Id.*

■ In sum, although we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.

### C. *Searches of Trash*

This Court first addressed the legality of trash searches under Article I, Section 11 in *Moran v. State*, where the totality of the circumstances test was also first articulated. In that case, the Indiana State Police initially identified Andrew Holland and Dominick Moran based on their purchases at a hydroponic equipment store operated by ISP for the purpose of identifying potential marijuana growers. Further investigation revealed excessive energy con-

sumption at Holland's home, and unusual warm areas were observed through thermal imaging surveillance. *Id.* at 537–38. At about 5:00 a.m. on a day scheduled for trash pickup, two ISP officers drove to Holland's house where they found several trashcans about one foot from the street in front of the house, near the mailbox. *Id.* at 538. The officers emptied the cans into the back of their truck and a subsequent search revealed marijuana clippings. *Id.* Based in part on this evidence, officers obtained a warrant to search the house and found both marijuana cuttings and several growing plants. *Id.* Holland and Moran were then charged with possession of marijuana. *Id.* They moved to suppress all evidence and testimony related to the warrantless search of the trash and the house based on their contention that the search of the garbage violated Article I, Section 11.

The majority in *Moran* explained: "Because we read this section of our constitution as having in its first clause a primary and overarching mandate for protections from unreasonable searches and seizures, the reasonableness of the official behavior must always be the focus of our state constitutional analysis." *Id.* at 539. The Court held that this reasonableness is to be determined based on a totality of the circumstances. *Id.* at 541. The Court concluded that the search was reasonable, explaining that "one who places trash bags for collection intends for them to be taken up, and is pleased when that occurs," and that the officers conducted themselves in a similar manner to trash collectors and did not cause a disturbance. *Id.* The majority also noted, however, that "Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." *Id.* The *Moran* dissent argued that the search of Moran's trash was not reasonable and concluded

that because a person's trash may reveal intimate details of the person's life and because it is unreasonable to dispose of one's trash anonymously, trash ought to be protected under Article I, Section 11.

Since *Moran*, the Court of Appeals has grappled with several cases arising from searches of trash. In *Lovell v. State*, 813 N.E.2d 393 (Ind.Ct.App.2004), *trans. denied*, police officers went to Lovell's home where they smelled a strong odor of ether. *Id.* at 395. There was no response when they knocked on the door, so they parked in a nearby parking lot and observed the residence. *Id.* After four people left the home, the officers retrieved three garbage bags that had been placed by the mailbox. *Id.* A search of the bags revealed evidence of the manufacture and use of methamphetamine. *Id.* The officers then obtained a warrant, searched Lovell's automobile and home, and found additional evidence. *Id.* at 396. Lovell was charged with dealing in methamphetamine and possession of chemical reagents or precursors with intent to manufacture. *Id.* at 397. She moved to suppress the evidence found in the trash bags and the evidence found pursuant to the resulting search warrant. *Id.* The trial court denied her motion and the Court of Appeals affirmed, reasoning that the search was reasonable under the totality of the circumstances. *Id.* at 398. The court pointed out many other houses had garbage bags next to their mailboxes and apparently Lovell's and the others' bags had been placed out for trash pickup. *Id.* The court also noted that the officers seized the garbage in the same way that garbage collectors would and did not trespass onto the Lovell's property. *Id.*

In *State v. Stamper*, 788 N.E.2d 862, 863 (Ind.Ct.App.2003) *trans. denied*, Stamper placed a garbage bag at the bottom of a garbage pile on his property an undeter-mined distance from the end of his driveway. A "No Trespassing" sign was posted on the property near the garbage pile. Police went onto the property and retrieved the bag. A search of the bag revealed evidence of marijuana use. The *Stamper* court held the search unreasonable based on the police entry onto Stamper's property. *Id.* at 866 n. 2. The court explained, "If we were to hold otherwise, police could search everyone's opaque garbage bags on their property without reason and thereby learn of their activities, associations, and beliefs." *Id.* at 867 (citing *State v. Tanaka*, 67 Haw. 658, 701 P.2d 1274, 1276 (1985)).

■ The Court of Appeals in this case acknowledged *Stamper*, but disagreed with a test of reasonableness based on whether the trash is on public or private property. *Litchfield v. State*, 808 N.E.2d 713, 716 (Ind.Ct.App.2004). The Litchfields urge us to adopt the reasoning in *Stamper* that whether police commit a trespass when searching a person's garbage is the decisive factor in determining the reasonableness of the search. They argue that we should hold that because Ringer entered their property to retrieve their garbage, the search of that garbage was unreasonable. The State argues that the *Stamper* court improperly applied *Moran* by affording too much weight to the fact that the police trespassed on Stamper's property. The State urges that whether or not police trespassed on a person's property is only one factor in the "totality of circumstances" *Moran* directs that whether the police enter unto the subject's property be considered in evaluating the reasonableness of a search. We think that the reasonableness of officer conduct in searching a citizen's trash does not turn on whether or not the police entered onto the citizen's property. Property lines are wholly irrelevant to the degree of suspicion of a viola-

tion or the need for enforcement and largely irrelevant to the degree of intrusion inflicted by the search or seizure. Moreover, the precise boundaries of a piece of real estate are not always apparent to one viewing the property, and various easements may well complicate the effort to identify whether trash barrels are fair game.

■ We also disagree with the view that searches of trash are per se unreasonable. Some states have invalidated all official searches of garbage. Most of them acknowledged, as stated in *Greenwood*, that a person may expect that his or her garbage "is readily accessible to animals, children, scavengers, snoops, and other members of the public." They reasoned explicitly or implicitly that people may nevertheless hold a different expectation as to access by police. *State v. Hempele*, 120 N.J. 182, 576 A.2d 793, 805 (1990); *see also People v. Krivda* 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262, 1268 (1971) ("defendants had a reasonable expectation that their trash would not be rummaged through and picked over by police officers acting without a search warrant"); *Tanaka*, 701 P.2d at 1276–77 ("people reasonably believe that police will not indiscriminately rummage through their trash bags to discover their personal effects"); *State v. Boland*, 115 Wash.2d 571, 800 P.2d 1112, 1117 (1990) ("while a person must reasonably expect a licensed trash collector will remove the contents of this trash can, this expectation does not also infer an expectation of governmental intrusion").

We do not find the arguments for a per se rule persuasive. Seizure of trash that is in its usual location for pickup is no intrusion at all on the owner's liberty or property interests. The owner wants and expects the trash to go away, and who removes it is normally a matter of indifference. If the trash is located in the place where it is normally picked up, the trash collection agency, whether public or private, is invited onto the property to the extent necessary to gather and empty the trash. Police officers can perform the same acts with no greater intrusion. It is not the intrusion, but rather the concern for unwarranted official snooping that makes the identity and purpose of the collector significant. But even that consideration is more formal than substantive. At the point the trash is removed by the authorized collector it is presumably fair game. *See Mast v. State*; 809 N.E.2d 415, 417 (Ind.Ct.App.2004). Prohibiting officers from examining trash before it is collected thus imposes burdens on law enforcement by forcing officers to accompany or follow trash collectors or work at the city dump to do what might be much more easily accomplished but provides no real protection to the citizen. In sum, because there is no intrusion, if properly justified by other factors, a search of trash is reasonable.

■ We think, however, that it is not reasonable for law enforcement to search indiscriminately through people's trash. As the majority explained in *Moran*, although a search of a person's garbage may be reasonable under specific circumstances, "Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." 644 N.E.2d at 541. We also agree with the conclusion of the *Stamper* court that police should not be permitted to enter a person's property and search his or her garbage "without reason." 788 N.E.2d at 867. We think the concern for reasonable searches of trash is best addressed by the requirement that, in order for a search or seizure to be reasonable, trash must be retrieved in substantially the same manner as the trash collector would take it. If garbage has been placed

out for collection at the usual place for collection and is easily accessible to any member of the public, in the absence of a mistake, any claim to possessory ownership has been abandoned. The citizen expects that trash to be collected and has effectively ceded all rights in it. *See Moran,* 644 N.E.2d at 541. There is therefore no material intrusion into the citizen's ordinary activities.

■ As already noted, however, an important factor in evaluating a reasonable search is appropriate restriction on arbitrary selection of persons to be searched. We believe a requirement of articulable individualized suspicion, essentially the same as is required for a "Terry stop" of an automobile, imposes the appropriate balance between the privacy interests of citizens and the needs of law enforcement. Allowing random searches, or searches of those individuals whom the officers hope to find in possession of incriminating evidence gives excessive discretion to engage in fishing expeditions. *See Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Bulington,* 802 N.E.2d at 440; *Baldwin,* 715 N.E.2d at 337. In Article I, Section 11 terms, that is unreasonable. The police need not go to the lengths elaborated in *Mast v. State,* 809 N.E.2d 415 (Ind.Ct.App.2004), where police rode in the trash pickup and searched it only after it was taken by its usual collectors. But ·police do need to ensure that they do not cause a disturbance or create the appearance of a police raid of the residence.

In this case, it is undisputed that the seized trash was left in barrels on the property in its regular place for collection. The Litchfields therefore abandoned it and exposed it to the public. It seems clear that the police acted reasonably by quickly and quietly retrieving the trash from the place it was ordinarily collected without creating undue embarrassment or indigni-

ty. However, we cannot determine from this record whether the information supplied by the DEA enabled the state police to be reasonably certain that the Litchfields had responded to an advertisement in *High Times,* or merely informed the police that the Litchfields had purchased from a vendor that coincidentally had advertised in that publication. There may be other facts bearing on whether the officers possessed articulable individualized grounds for suspicion that the Litchfields were involved in illegal activity. At the time of the suppression hearing, we had not yet expressly adopted the requirement that a search of a person's garbage be based on reasonable suspicion. There was no evidence presented on this issue and the trial court made no finding. We therefore remand this case to the trial court for a finding as to whether or not the officers possessed reasonable suspicion sufficient to obtain and search the Litchfield's garbage.

### Conclusion

This case is remanded to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ. concur.