## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 29 2017, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melissa J. Haley
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Jeffery Heuring,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 29, 2017

Court of Appeals Case No.
87A04-1701-CR-74

Appeal from the Warrick Superior Court

The Honorable J. Zach Winsett, Judge

Trial Court Cause No.
87D01-1505-F4-197

**Vaidik, Chief Judge.**

# Case Summary

Jeffery Heuring appeals his convictions for dealing in methamphetamine, possession of methamphetamine, maintaining a common nuisance, and possession of paraphernalia. He argues that the trial court erred by allowing the State to use evidence obtained during two searches, which he contends were conducted in violation of the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. Finding no error, we affirm.

# Facts and Procedural History

In May 2015, Heuring was living in the basement of his parents' house in Chandler. Next to the house was a pole barn. On May 27, John Williams, who said he had been involved in a love triangle with Heuring (and Williams's wife), told Officer Cole Georges of the Chandler Police Department and Detectives Matt Young and Tim Pierce of the Warrick County Sheriff's Office that he had seen a methamphetamine lab and precursors in the barn three weeks earlier. Williams then agreed to accompany the three of them to the property. When they pulled into the driveway, Heuring was standing in one of the barn's doorways. Williams said, "[T]here's really only one reason why he's usually in that barn." Tr. Vol. II p. 130.

As the men approached each other, Detectives Young and Pierce both smelled a chemical odor that they associated with manufacturing methamphetamine. Officer Georges then said that he saw smoke coming from behind the barn.

Detective Young ran around the barn, saw a burn barrel, and looked inside, where he saw what he believed to be a meth lab on fire. Detective Young reported what he had seen to Detective Pierce, who grabbed a fire extinguisher and put out the fire. When Detective Young told Heuring that a meth lab was burning in the barrel, Heuring nodded affirmatively.

[4] Based on Williams's tip, the observations at the property, and Heuring's acknowledgement that there was a meth lab in the burn barrel, Detective Pierce applied for and received a search warrant. Searches of the barn, the burn barrel, the basement of the house, and Heuring's car turned up methamphetamine precursors, manufacturing supplies, paraphernalia, and methamphetamine residue.

[5] The State charged Heuring with dealing in methamphetamine, possession of methamphetamine, maintaining a common nuisance, and possession of paraphernalia.[1] Heuring filed a motion to suppress, arguing that Detective Young violated the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution when he went behind the barn and looked into the burn barrel without a warrant authorizing him to do so and that all evidence obtained by virtue of that violation—including the evidence seized

---

[1] The State also filed four other charges that did not result in convictions: possession of anhydrous ammonia or ammonia solution with the intent to manufacture methamphetamine or amphetamine (found not guilty by jury); possession of two or more chemical reagents or precursors with the intent to manufacture a controlled substance (dismissed by the State); obstruction of justice (directed verdict); and possession of marijuana (dismissed by the State).

pursuant to the subsequent warrant—should be excluded. The trial court denied Heuring's motion, and the case proceeded to a jury trial. Heuring again objected to the State's use of the evidence from the searches, and the trial court again disagreed. The jury found Heuring guilty on the charges listed above, and the trial court sentenced him to eight years.

[6] Heuring now appeals.

# Discussion and Decision

[7] On appeal, Heuring renews his argument that the searches violated the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution and asserts that the trial court erred by allowing the State to use the evidence obtained from the searches. The constitutionality of a search is a question of law that we review de novo. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). The trial court did not explain its rationale for rejecting Heuring's argument, but we will affirm a trial court's decision to admit evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*.

# I. Fourth Amendment

[8] Heuring's primary contention on appeal is that Detective Young violated the Fourth Amendment when he ran behind the barn and looked in the burn barrel. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is undisputed that Detective Young did not have a warrant authorizing him to go behind the barn or to look into the barrel. However, the State argues that the warrantless search was justified by an exigent circumstance, namely, "a serious safety threat." Appellee's Br. p. 13. We agree.[2]

The State directs us to our Supreme Court's decision in *Holder v. State*, 847 N.E.2d 930 (Ind. 2006). There, the Court held that law enforcement did not violate the defendant's Fourth Amendment rights when they walked up to his house and sniffed outside a cracked window in an effort to determine the source of the smell of ether, which is commonly used in the manufacture of methamphetamine. The Court noted that one of "the exigencies that may properly excuse the warrant requirement" is a "threat[] to the lives and safety of officers and others" and concluded that the strong odor of ether, "a known explosive and flammable chemical," suggests the existence of such a threat. *Id.* at 937.

---

[2] The State also argues that the warrantless search was permissible under the Fourth Amendment because of the possibility that evidence was being destroyed and, alternatively, because the burn barrel was outside the "curtilage" of the house. Given our agreement with the State on the safety-threat issue, we need not address these arguments.

We see little daylight between the *Holder* officer's act of sniffing next to the defendant's house to determine the source of the smell of ether and Detective Young's act of going behind Heuring's barn to determine the source of the smoke. Detective Young, who had been told by Williams that Heuring had been manufacturing methamphetamine on the property and who had personally smelled a chemical odor associated with such manufacturing, testified that such activity involves "highly flammable items" and could lead to "explosions" and that meth labs are "dangerous" because they can "burn," "blow up," and "knock houses off foundations." Tr. Vol. II pp. 39, 41, 127. Far from being an unreasonable intrusion on Heuring's privacy, Detective Young's brief trip to the back side of the unenclosed barn to search for the source of the smoke, followed immediately by Detective Pierce's extinguishment of the fire, strikes us as sound police practice. Heuring's Fourth Amendment rights were not violated.

## II. Article 1, Section 11

Heuring also asserts that even if the evidence was admissible under the Fourth Amendment, it should have been excluded under Article 1, Section 11 of the Indiana Constitution. The language of that provision is virtually identical to that of the Fourth Amendment, but claims under the Indiana Constitution are analyzed differently. "The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). The reasonableness of a search turns on a balance of (1) the degree

of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law-enforcement needs. *Id*. at 361.

[12] Heuring's one-paragraph argument in this regard has not left us convinced that Detective Young acted unreasonably when he went behind the barn and looked in the burn barrel. Given Williams's tip, the chemical odor near the barn, and the smoke coming from behind the barn, the degree of suspicion of illegal activity was high. The degree of intrusion was low, as Detective Young did not have to go into an enclosed area to view the burn barrel. And in light of the known danger of meth manufacturing, the need was high to immediately investigate the source of the odor and the smoke. There was no violation of Article 1, Section 11.

[13] Affirmed.

Mathias, J., and Crone, J., concur.