**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PATRICK WIESE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1207-CR-595 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah F. Pierson-Treacy, Judge
The Honorable Shatrese M. Flowers, Commissioner
Cause No. 49F19-1201-CM-3720

**July 16, 2013**

**MEMORANDUM DECISION ON REHEARING- NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

On discretionary interlocutory appeal from the trial court's denial of his motion to suppress evidence, Patrick Wiese ("Wiese") presented the sole issue of whether the trial court's denial of his motion to suppress evidence was improper because the entry of Indianapolis Metropolitan Police Officer Adam Jones ("Officer Jones") into Wiese's apartment violated Wiese's rights under the Fourth Amendment to the United States Constitution, and under Article 1, Section 11 of the Indiana Constitution. We affirmed, holding that, from the circumstances supported by the facts most favorable to the trial court's ruling, a reasonable, experienced law enforcement officer could reasonably believe that at the moment of entry someone inside the apartment required immediate assistance and that the person was in danger, and that Officer Jones's entry into the residence was reasonable under the totality of the circumstances. Wiese now petitions for rehearing.

We grant Wiese's petition for rehearing for the sole purpose of clarifying our earlier opinion.

## Issues

In his petition for rehearing, Wiese raises several issues:

I.      Whether the facts as stated by the Court in its opinion are unsupported by the record;

II.     Whether exigent circumstances existed to justify the police officer's entry into Wiese's residence;

III.    Whether Trotter v. State[1] and Cudworth v. State[2] support a different decision; and

---

[1] 933 N.E.2d 572 (Ind. Ct. App. 2010).

[2] 818 N.E.2d 133 (Ind. Ct. App. 2004), trans. denied.

IV.    Whether forcible entry was justified by the police officer's needs and concerns.

**Discussion and Decision**

I. Facts Supported by the Record

Wiese contends that several facts, as set forth in the "Facts and Procedural History" section of the opinion are unsupported by the record.

Wiese first argues that the statement that Officer Jones was responding to "a report of a domestic disturbance" is unsupported by the record. However, Officer Jones testified that he was informed by the dispatcher that "[a] caller was kind of calling from the second floor and stated that there was a disturbance going on, that they could hear a verbal disturbance on the third floor." (Tr. at 7-8.) Further, Indianapolis Metropolitan Police Officer Frederick Lantzer ("Officer Lantzer"), who was also dispatched to the scene, testified that he had learned from dispatch that "it was above the caller's apartment on the third floor, and that it was possibly involving a man and a woman." (Tr. at 29.) And when Officer Jones first arrived on scene and entered the foyer of the apartment building, he could hear "screaming or yelling on the third floor." (Tr. at 8-9.) The record clearly supports the statement that Officer Jones was responding to a report of a domestic disturbance.

Wiese next argues that the statement that Officer Jones knocked three times is unsupported by the record. Officer Jones testified that "[he] knocked on the door of where [he] could hear yelling from." (Tr. at 10.) He then testified that after receiving no answer, he "once again knocked." (Tr. at 10.) Counsel then asked, "Okay. You knocked again. What happened next?" (Tr. at 11.) Officer Jones next testified that Wiese opened the door

3

slightly. After Officer Jones identified Wiese as being in the courtroom, counsel asked Officer Jones to continue, to which he replied, "Can you ask the question again?" (Tr. at 11.) Counsel then asked, "What happened after you knocked on the door again?" (Tr. at 12.) Officer Jones responded that "Mr. Wiese opened the door slightly." (Tr. at 12.) While we acknowledge that the record supports an inference that Officer Jones knocked twice, Wiese fails to articulate how an incorrect statement as to the number of times Officer Jones knocked on his door prejudiced him, other than a bald assertion that "[t]his Court should grant rehearing to reconsider the question based on the facts supported by the record." (Pet. for Reh'g at 4.)

Wiese next states in his petition:

[A]lthough Office [sic] Jones stated that Mr. Wiese opened the door "slightly," he explained that Mr. Wiese opened the door "a fourth of the way open" and said he could see "into the living room area," "the living room back to a back hall." Tr. 12, 13. Officer Lantzer testified that when he arrived on the third floor where Officer Jones was "communicating with whoever was inside the apartment," the door was "open." Tr. 17.

(Pet. for Reh'g at 2-3.) However, Wiese fails to articulate how these statements of fact are unsupported by the record.

Wiese finally argues that the statement that "[t]hroughout this encounter, Wiese was still yelling" is unsupported by the record. However, Officer Jones testified that when Wiese opened the door, "[Wiese] was angry. He was—he was upset. He was upset with me. He was agitated." (Tr. at 13.) Officer Jones then testified that "[Wiese] was yelling or—or, like, talking down to me, still in an agitated state." (Tr. at 13.) Furthermore, Officer Lantzer testified that when he arrived at the apartment, "[Wiese] appeared angry, and belligerent. His

4

voice was raised." (Tr. at 27-28.) He further testified that "[Wiese] was loud enough that, you know, if I had been the one communicating with him, I would have asked him to quiet down because he was, like, yelling pretty loud." (Tr. at 28.) The statement that Wiese was yelling throughout the encounter is supported by the record.

With the exception of the number of times Officer Jones knocked on the door, we conclude that our statements of fact are clearly supported by the record.

## II. Exigent Circumstances

Wiese contends that the State failed to demonstrate exigent circumstances justifying a warrantless police entry into his apartment. However, this contention depends on his argument that the opinion's characterizations of certain facts are unsupported by the record. Because we have decided supra that the record supports the opinion's characterizations of the facts, we decline to reconsider our conclusion under the exigent circumstances analysis.

## III. *Trotter* and *Cudworth*

Wiese contends that the police officers in this case had even less justification to enter the home than the officers in Trotter and Cudworth, where this Court found Fourth Amendment violations. Wiese "respectfully asks this Court to grant rehearing to consider the facts and holdings of those cases as informing a different decision in this case."

In Trotter, a police officer responded to a complaint of gunshots fired in a backyard near 146th Street and Towne Road. 933 N.E.2d at 577. While investigating, the police officer approached a campfire near a one-story home with a large attached pole barn. Id. The officer spoke with an individual named Dircks, who was in the vicinity of a .45 caliber

5

handgun, .45 caliber ammunition, shotgun shell boxes, and a gallon bottle of hard liquor. Id. Dircks informed the officer that his cousin, Trotter, was inside the residence using the bathroom, and in response to an inquiry about the firearms stated that he and Trotter "were just having some fun." Id.

After other officers arrived and placed Dircks in handcuffs, they began to look for Trotter. Id. After noticing that a door on a corner of the pole barn was unlocked, the officers entered and announced their presence, while shining their flashlights around the dark pole barn. Id. at 577-78. They heard a rustling sound, and after announcing their presence and receiving no response, they shined their lights in the direction of the noise and observed Trotter standing behind some construction equipment approximately fifteen feet away pointing a rifle at them. Id. at 578.

After being charged with class D felony pointing a firearm and class D felony criminal recklessness, Trotter filed a motion to suppress evidence obtained as a result of the police officers' observations. Id. The trial court concluded that the police officers' entrance into the residence was unconstitutional, but denied Trotter's motion to suppress based on the doctrine of attenuation. On discretionary interlocutory appeal, another panel of this Court reversed and remanded, stating that "the record offers no support for the State's contention[] . . . [that the officers entered the residence to determine if Trotter had been injured or was in need of assistance.]" Id. at 580, 584. In support of that decision, the Court cited the following facts:

> Officers arrived on the scene to investigate what was at most an ordinance violation. Officers spoke with Dircks and were informed that a second

6

individual, Trotter, was inside the house using the bathroom. At no time did the officers inquire about Trotter's well-being, nor did Dircks suggest that Trotter was injured or in need of aid. Although Officer Butterfield testified that he was concerned that Trotter could be intoxicated and passed out inside the residence, there was no evidence that Trotter had consumed any alcohol, much less evidence indicating that he was so heavily intoxicated that he needed immediate assistance. These police officers were not confronted with circumstances that would lead to a reasonable belief that Trotter was in need of emergency assistance.

Id. at 580.

In Cudworth, the police responded to an anonymous 911 call stating that a person was being held at gunpoint at a specific address. 818 N.E.2d at 135. However, when the officers arrived, they saw several persons leaving the home as the police dispatcher had instructed them to do. Id. at 140. There was no blood in the area or on any of the persons exiting the home, nor was there evidence of a struggle. Id. None of the persons had any idea why the officers were there. Id. Furthermore, when officers questioned one of the persons who had been inside the house, she "told them that there was not a man inside the house being held at gunpoint, that no one was still inside the house, and that she had not seen anyone with a gun inside the house." Id.

The officers nonetheless entered the residence and began searching, finding a revolver and a sawed-off shotgun in plain view in the attic, and a trash bag in the garage containing evidence of items used to manufacture methamphetamine. Id. at 136. After obtaining a search warrant, officers found more equipment and supplies relating to the manufacture of methamphetamine, and a pipe containing marijuana. Id.

After being charged with several counts, Cudworth filed a motion to suppress

evidence obtained during the search of the residence, which was denied; he again renewed his motion at trial. Id. After being convicted of conspiracy to commit dealing in methamphetamine and possession of chemical reagents, he appealed. Another panel of this Court reversed his conviction because "the State failed to demonstrate either exigent circumstances or probable cause required to support a lawful warrantless search." Id. at 142.

This case is distinguishable from Trotter and Cudworth. Here, the police officers arrived on scene to investigate a possible domestic disturbance. Immediately upon entering the front door of the building on the first floor, Officer Jones heard a loud male voice screaming or yelling. When Wiese, who appeared angry and agitated, opened the door, Officer Jones explained that there was a report of a disturbance, to which Wiese replied that there was no disturbance. When asked if there was anyone else in the apartment, Wiese replied that there was. When Officer Jones spoke with Wiese about "checking the inside to make sure everybody is okay[,]" Wiese still would not open the door. (Tr. at 14.) Unlike in Trotter or Cudworth, Officer Jones was confronted with circumstances that would lead to a reasonable belief that someone inside Wiese's residence required immediate assistance, and that person was in danger.

## IV. Indiana Constitution

Finally, Wiese contends that forcible entry was not justified under an Indiana Constitutional analysis, and he "asks this Court to reconsider its conclusion, under the Litchfield[3] analysis, that the officer's concerns and needs were high in the circumstances

---

[3] Litchfield v. State, 824 N.E.2d 356 (Ind. 2005).

8

presented here." (Pet. for Reh'g at 4.) He "asks this Court to find that under the totality of the circumstances, the police entry was unreasonable and violated [his] rights under Article One, Section 11 of the Indiana Constitution." (Pet. for Reh'g at 4-5.)

However, Wiese's contention depends on his argument that the opinion's characterization of the facts referring to a report of "domestic violence" is unsupported by the record. (Pet. for Reh'g at 4.) Because we have decided <u>supra</u> that the record supports the opinion's reference to a report of "domestic violence," we decline to reconsider our conclusion under the <u>Litchfield</u> analysis.

## Conclusion

We grant Wiese's petition for rehearing, reaffirming our opinion in all respects.

NAJAM, J., and BARNES, J., concur.

9