## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2020, 10:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James C. Spencer
Dattilo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Albritton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 23, 2020

Court of Appeals Case No.
19A-CR-2928

Appeal from the
Jefferson Superior Court

The Honorable
Michael J. Hensley, Judge

Trial Court Cause No.
39D01-1901-F6-45

**Vaidik, Judge.**

# Case Summary

[1]  Joshua Albritton appeals the trial court's denial of his motion to suppress. We affirm.

# Facts and Procedural History

[2]  Albritton and C.T. have a child together, K.A. On October 23, 2018, the Jefferson Circuit Court issued an ex parte order for protection prohibiting Albritton from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with" C.T. Appellant's App. Vol. II p. 37. In addition, Albritton was "ordered to stay away from the residence" of C.T. *Id.* The order expires October 23, 2020.

[3]  On January 6, 2019, C.T. found a package on the doorstep of her house and took it inside. When the package started to "buzz," she took it back outside and called the police. Tr. p. 6. Madison Police Department Officer Daniel Slygh responded to the call and observed that the package had a card that read: "Please just let him have this. I will never bad mouth you to him. I swear. I just want to love my son." *Id.* Officer Slygh opened the package and found a drone and cell phone inside. The cell phone had missed calls from "Dad." *Id.* at 7.

[4]  Five days later, on January 11, Officer Slygh went to Albritton's townhouse. His unit shared a concrete porch with the neighboring unit, and a sidewalk led away from the porch. Ex. 1. When Officer Slygh knocked on Albritton's door, a female answered. After a brief conversation, the female asked Officer Slygh not

to take Albritton to jail. Officer Slygh said he wasn't there to arrest Albritton but rather to "interview" him. Tr. p. 9. Officer Slygh asked the female to get Albritton. After waiting about ten minutes, Officer Slygh returned to his patrol car. At about the same time, Albritton opened the door, looked around, and went back inside. As the door closed, Officer Slygh called out to Albritton and "walked up to the porch." *Id.* Albritton opened the blinds on the door, and the two "spoke through the door." *Id.* Officer Slygh told Albritton he "was there merely to discuss the situation, supplement [his] report and send it" to the prosecutor's office. *Id.* at 9-10. Albritton, however, said he didn't believe the officer. After the two had "words," Officer Slygh said he was "just going to go ahead and file for [an arrest] warrant." *Id.* at 10. When Officer Slygh got about halfway to his car, Albritton opened the door, stepped onto the porch, and yelled at Officer Slygh he was a "liar" and there to arrest him. *Id.* When Officer Slygh responded that he "was there to follow up on the invasion of privacy from his child's mother," Albritton exclaimed, "You want to take me to jail for trying to stay in my son's life." *Id.* Believing that Albritton "admitted" to violating the protective order, Officer Slygh decided to arrest him for invasion of privacy. *Id.* at 15. Officer Slygh—who was on the sidewalk—approached Albritton—who was on the porch—and told him he was under arrest. *Id.* at 10, 16. When Officer Slygh "went to take custody" of Albritton, Albritton "pulled away," went back inside his house, and closed the door. *Id.* at 10; *see also id.* at 16 (Officer Slygh testifying that he had his "hands on [Albritton] when he pulled away"). Officer Slygh opened the door, entered Albritton's house, and

arrested him. According to Albritton, when Officer Slygh entered his house, Officer Slygh tackled him on the stairs. *Id.*

[5] The State charged Albritton with Class A misdemeanor invasion of privacy for violating the protective order and Level 6 felony resisting law enforcement. The resisting charge alleges that Albritton knowingly or intentionally forcibly resisted, obstructed, or interfered with Officer Slygh while he was lawfully engaged in the execution of his duties and that Albritton injured Officer Slygh (injury to his left-forearm tendon) while committing the offense. Appellant's App. Vol. II p. 10. The charging information, however, does not specify whether the resisting charge is based on what occurred on the porch or inside Albritton's house.

[6] Albritton filed a motion to suppress, which provides:

> 2. Defendant was arrested . . . following a search and seizure resulting from an unlawful, warrantless entry into Defendant's residence by law enforcement.
>
> 3. Any information from the unlawful entry was unlawfully obtained because of the absence of any warrant or any exception to the warrant requirement.
>
> 4. The entry into Defendant's residence and the resulting search and seizure violates the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution.
>
> WHEREFORE Defendant requests that all evidence obtained as a result of the unlawful, warrantless entry into Defendant's residence by law enforcement [sic].

*Id.* at 42. The motion to suppress doesn't specifically identify what evidence Albritton seeks to suppress other than "all property seized," "all observations made," and "all statements made" by Albritton. *Id.*

At the hearing on Albritton's motion, Officer Slygh testified to the above version of events. Albritton testified similarly, except that he said when he opened the door, he stayed in the doorway and "never stepped out onto the porch." In addition, Albritton testified that once Officer Albritton entered his house, Officer Albritton tackled him on the stairs. The trial court denied Albritton's motion, explaining:

> 8. That "A law enforcement officer may arrest a person when the officer has . . . probable cause to believe that the person violated I.C. 35-46-1-15.1 (invasion of privacy) or I.C. 35-46-1-15.3."

> 9. That Officer Slygh had probable cause that the defendant had violated the protective order and could therefore perform a warrantless arrest of the defendant.

> 10. Officer Slygh could not, however, make a warrantless entry into the defendant's home to make this arrest. The testimony differs dramatically on this issue.

> 11. Officer Slygh states that the defendant came outside of the residence, stood on the porch, and made an incriminating statement. At this time, while the defendant was still outside of the residence, the officer advised him that he was under arrest.

> 12. The defendant claims he never left the inside of the residence.

> I3. The Court finds that the defendant appeared outside of his home and cannot defeat the officer's attempt to arrest him by fleeing back inside[.]

*Id.* at 61.

[8]     This interlocutory appeal now ensues.

# Discussion and Decision

[9]     Albritton contends that his Fourth Amendment and Article 1, Section 11 rights were violated when Officer Slygh entered his house without a warrant. Albritton asks us to reverse the denial of his motion to suppress and order the dismissal of the resisting charge. Albritton's argument assumes that the resisting occurred inside his house, after Officer Albritton allegedly entered unlawfully. But based on the limited information before us, it could just as easily be based on what happened on the porch, before Officer Albritton entered his house. Nonetheless, we will address Albritton's unlawful-entry argument.

[10]    The Fourth Amendment to the United States Constitution protects "[t]he right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless in-home arrest is not valid without probable cause and exigent circumstances making it impractical to first procure an arrest warrant." *Lepard v. State*, 542 N.E.2d 1347, 1349 (Ind. Ct. App. 1989) (quotation omitted), *reh'g denied*. Albritton doesn't argue that Officer Slygh lacked probable cause to make a warrantless arrest of him for invasion of privacy. *See* Ind. Code § 35-33-1-1.

Rather, Albritton argues there weren't any exigent circumstances allowing Officer Slygh to enter his house to do so. Traditionally, exigent circumstances have been found to exist when "a suspect is fleeing or likely to take flight to escape arrest" or "in cases involving hot pursuit or moveable vehicles." *Lepard*, 542 N.E.2d at 1349-50 (quotation omitted); *see also Barnes v. State,* 946 N.E.2d 572, 576 (Ind. 2011) ("[O]fficers may enter the home if they are in 'hot pursuit' of the arrestee or if exigent circumstances justified the entry."), *adhered to on reh'g*, 953 N.E.2d 473 (Ind. 2011). In other words, "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana,* 427 U.S. 38, 43 (1976). A home's open doorway is a "public" place. *Id.*

[11] Here, Officer Slygh testified that when he got about halfway to his car, Albritton opened the door, stepped onto the porch, and yelled at him he was a "liar" and there to arrest him. When Officer Slygh responded that he "was there to follow up on the invasion of privacy from his child's mother," Albritton exclaimed, "You want to take me to jail for trying to stay in my son's life." Based on Albritton's admission, Officer Slygh decided to arrest him for violating the protective order. Officer Slygh—who was on the sidewalk— approached Albritton—who was on the porch—and told him he was under arrest. When Officer Slygh "went to take custody" of Albritton, he "pulled away," went back inside his house, and closed the door. Officer Slygh opened the door, entered Albritton's house, and arrested him. Because Officer Slygh started to arrest Albritton when he was in a public place, Officer Slygh properly

followed Albritton inside his house to finish the arrest. There was no Fourth Amendment violation.

[12] Although Article 1, Section 11 of the Indiana Constitution largely tracks the Fourth Amendment, we interpret and apply it independently. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). The reasonableness of a search or seizure under the Indiana Constitution "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Those circumstances include a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law-enforcement needs. *Id.* at 361.

[13] Albritton concedes that the degree of suspicion weighs in favor of law enforcement. Appellant's Reply Br. p. 9. However, he claims that the other factors weigh in his favor. He argues there is no reason that Officer Slygh could not have gotten an arrest warrant before going to his house, especially given that five days had passed between Officer Slygh going to C.T.'s house to investigate the alleged invasion of privacy and Officer Slygh going to his house. Although Officer Slygh testified that he believed he had probable cause to arrest Albritton before going to Albritton's house, the situation developed once Officer Slygh got there. When Albritton essentially admitted to violating the protective order, Officer Slygh decided to arrest him right then and there, as he was permitted to do. However, Albritton, who was on his porch, "pulled away"

from Officer Slygh as he tried to arrest him. Officer Slygh acted reasonably by following Albritton into his house to finish the arrest. There was no violation of the Indiana Constitution. We therefore affirm the trial court's denial of Albritton's motion to suppress.

[14] Affirmed.

May, J., and Robb, J., concur.