**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 09 2014, 9:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RYAN W. TANSELLE**
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERREK T. BERRYHILL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.32A04-1310-CR-527 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Karen M. Love, Judge
Cause No. 32D03-1301-FB-000007

**July 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Derrek Berryhill was convicted of Possession of Marijuana,[1] a class A misdemeanor, and Aiding, Inducing, or Causing the Commission of a Robbery,[2] a class B felony. Berryhill presents several issues for our review, which we restate as:

1.    Did the trial court err in permitting the State to amend the charging information to add Count III, Aiding, Inducing or Causing the Commission of a Robbery?

2.    Did the trial court abuse its discretion in admitting into evidence the marijuana police found on Berryhill's person?

3.    Did the trial court abuse its discretion in admitting into evidence Berryhill's statement to police?

4.    Is the evidence sufficient to sustain Berryhill's conviction for aiding, inducing, or causing the commission of a robbery?

5.    Did the trial court properly sentence Berryhill?

We affirm.

At some point prior to January 26, 2013, Berryhill and Rameil Pitamber, who had gone to school together, discussed an idea to rob the Little Caesars where Berryhill worked. During their discussions, Berryhill told Pitamber the names of the employees who would be working, what they would be doing, and even gave Pitamber a directive to target a particular employee. On January 26, 2013, Berryhill was scheduled to work until close, which was typically ten or eleven at night. Early in the evening, however, Berryhill told the assistant manager that he did not feel well, and Berryhill was permitted

---

[1] Ind. Code Ann. § 35-48-4-11(1) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

[2] Ind. Code Ann. § 35-42-5-1 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014); Ind. Code Ann. § 35-41-2-4 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

to leave early. Before Berryhill ended his shift, he made at least one phone call to a prepaid cell phone, or "burn phone," that Pitamber had recently activated. *Transcript* at 559. When Berryhill made the phone call to the "burn phone" he also entered *67 to block his number so his number would not show up on phone records.

Pitamber picked up Berryhill around 9:00 p.m. at a Meijer very close to the Little Caesars store. Pitamber was driving his 1992 red Ford Explorer. Berryhill and Pitamber then drove to a nearby Speedway station where they watched the Little Caesars store. Another individual joined them in the vehicle while they were parked at the Speedway, but that person left when Berryhill and Pitamber began talking about the robbery.

As Berryhill and Pitamber had discussed, Pitamber called Little Caesars and ordered a pizza. Pitamber used the "burn phone" because he did not want his number showing up on Little Caesars caller ID. Pitamber made a second call from the "burn phone" to inform the employees that he would be late picking up the pizza. As an employee of Little Caesars, Berryhill knew that the procedure was for the doors to be locked at closing time and that persons needing to pick up and pay for a pizza after the close of business would knock at the door and be let in. This is precisely what Pitamber was told to do by the Little Caesars employee who answered Pitamber's second call.

Pitamber and Berryhill drove to a neighborhood behind the Little Caesars and parked Pitamber's vehicle at the end of a cul-de-sac. At some point, Pitamber called the store again and, pretending that he had been in a hit-and-run, asked if there were cameras monitoring the outside of the store. Pitamber learned that there were none. Pitamber was dressed in a black snowsuit, a brown husky jacket, and boots. He was also wearing a

3

dark ski mask. Upon exiting his vehicle, Pitamber grabbed the gun and baton he had purchased and then he headed in the direction of the Little Caesars. Shortly after 11:00 p.m., Pitamber arrived at the front of the Little Caesars and knocked on the window. When the assistant manager opened the door, Pitamber walked in, waved his gun, and told the manager to give him the money from the cash register and safe. Berryhill had told Pitamber where the safe was located.

The assistant manager accessed the safe and gave Pitamber the money that was accessible. There was an inner safe that, unbeknownst to Pitamber (or Berryhill), was on a time lock. The manager, other employees, and Pitamber were all unsuccessful in their attempts to get into this inner safe.

At some point, a second employee walked to the front of the store. Pitamber then ordered all of the employees to go to the back of the store and instructed them to tie each other up with zip ties and duct tape that Pitamber had brought with him. Pitamber then went to the front of the store again, took the money, broke the employees' cell phones, and smashed the store security monitors with the baton.[3] Before leaving, Pitamber ordered the employees into a bathroom and then he blocked the bathroom door because Berryhill had told him the door did not lock. Pitamber left through a back door. The employees remained in the bathroom for five to six minutes.

As Pitamber ran through a grassy area behind the Little Caesars on his way back to his car, the "burn phone" fell out of his pocket. Pitamber also threw one of the Little Caesars employees' keys on the ground. When Pitamber reached his truck, Berryhill was

---

[3] This did not prevent the security surveillance system from recording the events inside the Little Caesars.

still inside. Berryhill and Pitamber drove back to Berryhill's house and split the money from the robbery.[4]

Because Berryhill's phone number was in the "burn phone" that Pitamber dropped, the two devised a plan that if the police located the phone and contacted Berryhill, Berryhill was going to say that he had called Pitamber "lookin' for some weed or somethin' like that." *Id*. at 562.

Thomas Owens, a K-9 officer with the Avon Police Department, was dispatched to the Little Caesar's in response to the robbery. Officer Owens and his K-9 went to the rear of the store and picked up a scent. The K-9 followed the scent and along the path, Officer Owens located the "burn phone" in a grassy area on top of the snow. Officer Owens also found a key chain on a pink lanyard that belonged to one of the Little Caesars employees a short distance away. Both items were on top of the snow, indicating that they had not been there long. The canine followed the scent to a privacy fence and picked up the scent again on the other side of the fence in a neighborhood.

Avon Police Detectives Sean Stoops, Brian Nugent, and Jeremy Chapman were dispatched to the scene of the robbery. The officers used the cell phone records from the "burn phone" discovered behind the Little Caesars and data from cell phone towers to identify Berryhill as a person in the area of the robbery at the time it occurred. The officers also learned that Berryhill was an employee of Little Caesars. Based on this and

---

[4] Pitamber took approximately $644 in cash from the Little Caesar's. The total financial loss, which includes replacement costs for security monitors, cables, and supplies, was approximately $1,300. Pitamber's share of the money was recovered. Berryhill spent his share of the money on clothes, shoes, and marijuana that he purchased from Pitamber.

other information, on January 29, 2013, Detective Stoops went to Little Caesars and asked to speak with Berryhill. When Detective Stoops told Berryhill that he wanted to talk to him regarding the robbery, Berryhill became "very defensive and belligerent," "began cursing," and "began shifting his weight from left to right." *Transcript* at 491. Detective Stoops, believing this behavior to be indicative of verbal and physical aggression, placed Berryhill in handcuffs and removed him through the back of the store where another detective was waiting. Once outside, Detective Stoops performed a pat-down search of Berryhill and discovered a hard object in Berryhill's right front pocket. Believing the object could have been part of a gun, Detective Stoops retrieved the object, which turned out to be a metal tin. Detective Stoops noted an odor of marijuana. Inside the tin, Detective Stoops discovered marijuana. Berryhill was placed under arrest and transported to the Avon Police Department.

Prior to being interviewed by Detective Stoops, Berryhill was advised of his Miranda rights and he signed a waiver of rights form. During the interview, Berryhill admitted to being present when Pitamber committed the robbery of Little Caesars. In addition to Berryhill's admission, Pitamber gave a statement to police and explained that he and Berryhill discussed the robbery, conducted surveillance of the Little Caesars, and created an alibi. Pitamber also told the police that Berryhill told him who would be working, devised the plan to order a pizza and pick it up late, told him where the safe was located, informed him that the bathroom door did not lock, and that the two agreed to split the proceeds from the robbery.

On January 31, 2013, Berryhill was charged with Count I, conspiracy to commit robbery, a class B felony, and Count II, possession of marijuana, a class A misdemeanor. On May 30, 2013, the State filed a motion to amend the charging information to add Count III, aiding and abetting in the commission of robbery, a class B felony. The trial court ultimately permitted the addition of Count III.

A four-day jury trial commenced on August 20, 2013. During the trial Berryhill made an oral motion to suppress the marijuana found on his person at the time of his arrest, which the trial court denied. Berryhill subsequently made an oral motion to suppress his statement to police, and the trial court denied this motion as well. At the conclusion of the trial, the jury found Berryhill guilty of Counts II and III but not guilty of Count I. On August 29, 2013, Berryhill filed a motion pursuant to Ind. Trial Rule 50(A) and Ind. Trial Rule 59(J)(7), seeking a judgment notwithstanding the verdict. Specifically, Berryhill challenged the sufficiency of the evidence supporting the guilty verdict with respect to Count III and further argued that the verdicts were inconsistent. Following a hearing on September 10, 2013, the trial court denied Berryhill's request for relief.

The trial court held a sentencing hearing on September 27, 2013, and sentenced Berryhill to concurrent sentences of six months on Count II and nine years with three years suspended to probation on Count III. Berryhill now appeals.

1.

Berryhill first argues that the trial court erred in permitting the State to amend the charging information by adding Count III, aiding and abetting in the commission of a

robbery. We begin by noting that the State initially charged Berryhill with Count I, class B felony conspiracy to commit robbery, and Count II, class A misdemeanor possession of marijuana. A jury trial was set to begin on June 18, 2013. On May 30, 2013, the State filed its motion to amend the charging information to add Count III, class B felony aiding, inducing, or causing the commission of a robbery.[5] Berryhill objected to the addition of Count III, and following a hearing on June 3, 2013, the trial court took the matter under advisement. On June 11, 2013, the trial court denied the State's motion to add Count III, but ultimately granted the State's motion to reconsider such ruling, thereby permitting the State to add Count III. Berryhill immediately moved for a continuance of the jury trial, which the trial court granted. A new trial date was set for August 20, 2013.

Ind. Code Ann. § 35-34-1-5 (b) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014) states, in pertinent part, that an information "may be amended in matters of substance . . . by the prosecuting attorney, upon giving written notice to the defendant at any time . . . before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant." The "substantial rights" of a defendant include a right to sufficient notice and an opportunity to be heard regarding the charge. *Gaby v. State*, 949 N.E.2d 870 (Ind. Ct. App. 2011). "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id.* at 874 (*quoting Brown v. State,* 912 N.E.2d 881, 890 (Ind. Ct.

---

[5] The State also sought to amend Counts I and II, but only to make minor grammatical and stylistic changes. Berryhill did not object to the amendments to Counts I and II, but did object to the addition of Count III.

8

App. 2009), *trans. denied* ).  The substantial rights of the defendant are not prejudiced if: (1) a defense under the original information would be equally available after the amendment, and (2) the defendant's evidence would apply equally to the information in either form.  *Gaby v. State*, 949 N.E.2d 870.

Under Amended Count I, the charging information provided that Berryhill conspired with Pitamber to commit the crime of robbery and that the overt act in furtherance of the conspiracy was that Berryhill "assisted in the armed robbery of Little Caesars by providing inside information on the operation of Little Caesars to [Pitamber]." *Appellant's Appendix* at 100.  Count III alleged simply that Berryhill "did knowingly aid, induce, or cause [Pitamber] to commit robbery, a Class B felony."  *Id.* at 102.  The trial court properly concluded that the amendment to add Count III was a substantive change.  Our inquiry is thus whether the amendment prejudiced Berryhill's substantial rights.

Berryhill contends that the addition of Count III prejudiced his substantial rights because the addition of new elements for the crime of aiding, inducing or causing the commission of the robbery essentially "evaporated" his defense to Count I, conspiracy to commit robbery.  *Appellant's Brief* at 12.  Berryhill, however, does not explain what his defense was prior to the amendment or how his defense was altered after the addition of Count III.  Although conspiracy to commit robbery and aiding and abetting in the commission of a robbery have separate and distinct elements, as is reflected in the charging information, this is not a case where the evidence supporting the two different charges was different or where two different defenses would be used.

9

To be sure, Berryhill was fully aware of the evidence against him in that he knew of Pitamber's detailed statement to police that Berryhill was the brains behind the robbery and that the plan was for Pitamber to carry it out. The record illustrates that Berryhill's defense was that, while he did have conversations with Pitamber about robbing Little Caesars, he did not believe that Pitamber would actually go through with it. Under the facts of this case, this same defense was equally applicable to both Counts I and III.

Further, we note that Berryhill was afforded an opportunity to be heard regarding the addition of Count III and that after the State's motion to amend was granted, the trial court granted Berryhill's motion to continue the trial date. The continuance resulted in Berryhill having nearly two months to prepare a defense to the amended charge, which, we have noted, was the same defense to both Counts I and III. Berryhill has failed to establish that the amendment prejudiced his substantial rights. *See Ramon v. State*, 888 N.E.2d 244 (Ind. Ct. App. 2008).

Berryhill's argument that the two-month continuance for the jury trial was improper because it impacted his liberty interests is unavailing. Berryhill never filed a motion for a speedy trial under Ind. Crim. Rule 4. Further, Berryhill received credit for his pre-trial incarceration. Based on the foregoing, we conclude that the trial court properly allowed the State to amend the charging information to add Count III.

2.

Berryhill argues that the trial court abused its discretion in admitting evidence of the marijuana found on his person. During the trial, Berryhill made an oral motion to

10

suppress the marijuana found on his person on grounds that it was the result of an illegal search of his person. After hearing arguments outside the presence of the jury, the trial court denied Berryhill's motion and permitted the evidence to be presented to the jury.

Questions regarding the admission of evidence are within the sound discretion of the trial court, and we review the court's decision only for an abuse of discretion. *State v. Seabrooks,* 803 N.E.2d 1190 (Ind. Ct. App. 2004). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.* A trial court's ruling on the admissibility of evidence will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Gonser v. State,* 843 N.E.2d 947 (Ind. Ct. App. 2006). The ultimate determination of the constitutionality of a search or seizure, however, is reviewed de novo. *Woodson v. State,* 966 N.E.2d 135 (Ind. Ct. App. 2012), *trans. denied.*

The federal Fourth Amendment and article 1, section 11, of the Indiana Constitution each protect citizens from unreasonable searches and seizures. *Holder v. State,* 847 N.E.2d 930 (Ind. 2006). Although structured similarly, the interpretation and application of each constitutional provision varies. *Id.*

The Fourth Amendment of the United States Constitution affords individuals protection from unreasonable searches and seizures, and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Krise v. State*, 746 N.E.2d 957 (Ind. 2001); *Woodson v. State*, 960 N.E.2d 224 (Ind. Ct. App. 2012). When a search or seizure is conducted without a warrant, the State bears the

11

burden of proving that an exception to the warrant requirement existed at the time of the search or seizure. *Halsema v. State*, 823 N.E.2d 668 (Ind. 2005).

Encounters between law enforcement officers and citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Police/citizen encounters can be characterized in three different ways:

> First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. Second, pursuant to Fourth Amendment jurisprudence, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. This is a consensual encounter in which the Fourth Amendment is not implicated.

*State v. Calmes,* 894 N.E.2d 199, 202 (Ind. Ct. App. 2008). A search or seizure conducted during a full arrest lasting longer than a short period of time is permissible only if supported by probable cause. *Clark v. State*, 994 N.E.2d 252 (Ind. 2013) (citing *Fingers v. State*, 799 N.E.2d 528 (Ind. 2003)). A search or seizure that occurs during a brief investigative stop requires a lower standard of reasonable suspicion. *Id*.

Determining whether the encounter is consensual or some level of detention "turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." *Id*. at 261 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). The test is objective, i.e., not whether the citizen actually felt free to leave, but "whether the officer's words and

12

actions would have conveyed that to a reasonable person." *Id.* (quoting *California v. Hodari D.*, 499 U.S. at 628).

Here, Berryhill was at work when Detective Stoops approached him. At the time, Detective Stoops was wearing a bullet-proof vest that had the word "police" in "big white letters." *Transcript* at 467. Detective Stoops immediately identified himself as a police officer and informed Berryhill that he wanted to ask him questions about the robbery. Berryhill instantly became "very defensive and belligerent," "began cursing," and "began shifting his weight from left to right." *Id.* at 491. Within one to two minutes of encountering Berryhill, Detective Stoops placed Berryhill in handcuffs and tried to calm him down.

The encounter with Berryhill started out as a consensual encounter, but quickly turned into a non-consensual encounter after Berryhill was placed in handcuffs. Once in handcuffs, no reasonable person would believe they were free to leave. *See Woodson v. State*, 960 N.E.2d 224 (Ind. Ct. App. 2012). Even though the encounter was not consensual, Detective Stoops still did not need probable cause to detain Berryhill to conduct an investigatory stop falling short of traditional arrest. During what is commonly known as a Terry stop, a police officer is permitted "to stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' even if the officer lacks probable cause." *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009). "Such reasonable suspicion must be comprised of more than hunches or unparticularized suspicions." *State v. Murray*, 837 N.E.2d 223, 225-26 (Ind. Ct. App. 2005), *trans. denied.*

13

Here, Detective Stoops had reasonable suspicion that Berryhill was engaged in – or had engaged in – criminal activity and that he could pose a danger to him. During the suppression hearing, Detective Stoops outlined the steps of the investigation into the robbery at Little Caesars. He explained that from phone records that had been evaluated, it had been determined that calls were made to and from the burn phone to Berryhill's phone during the short amount of time the burn phone was activated. It was also known that the burn phone was used to place the bogus pizza order that precipitated the robbery. The detectives also spoke with Berryhill's brother, who gave them additional information leading them to believe Berryhill was involved in the robbery. Even though the description of the robber and the video surveillance of the robbery did not implicate Berryhill, phone records supported Detective Stoops's theory that Berryhill was somehow involved. The police further suspected that Berryhill had provided inside information to the individual who carried out the robbery because of the manner in which the robber acted, i.e., the robber knew where the safe was, knew who was working, and knew that the bathroom door did not lock.

Additionally, when Detective Stoops questioned Berryhill about the robbery, Berryhill became agitated, shifted his weight from side to side, and cursed at Detective Stoops. Given his training and experience, Detective Stoops believed that he needed to protect himself from Berryhill's aggressive behaviors, so he placed Berryhill in handcuffs. Detective Stoops then removed Berryhill from the immediate surroundings and conducted a limited search of Berryhill's outer clothing. This is permissible in such situations. *See Johnson v. State*, 710 N.E.2d 925, 928 (Ind. Ct. App. 1999) (noting that

14

where officer has "a reasonable fear of danger," the officer may "conduct a carefully limited search of the [suspect's] outer clothing" for the distinct purpose of locating weapons). It was during this pat-down that Detective Stoops felt a hard object in Berryhill's pocket that Detective Stoops thought could have been the handle of a revolver or a semi-automatic handgun. Detective Stoops therefore removed the object and discovered a metal tin that was determined to contain marijuana.

The facts, taken as a whole, demonstrate that Detective Stoops had reasonable suspicion to conduct a Terry stop and pat-down of Berryhill's outer clothing. Detective Stoops did not violate Berryhill's Fourth Amendment rights when he seized the metal tin containing marijuana from Berryhill's person. Given that the marijuana was legally seized, the trial court did not abuse its discretion in admitting evidence related thereto.

Although Berryhill briefly mentions the protections afforded under the Indiana Constitution, he makes no separate argument in that regard. We nevertheless address the argument. Under the article 1, section 11 of the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356 (Ind. 2005). Evaluation of the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Id.* Although there may be other relevant considerations that are unique due to differing circumstances, in general, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the

method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.*

Given the facts of the present case, we conclude that the search of Berryhill's person was reasonable under the Indiana Constitution. We begin by noting that Berryhill was a suspect in an armed robbery investigation for which the weapon had not yet been recovered. When Detective Stoops confronted Berryhill at his place of employment, Berryhill became "very defensive and belligerent," "began cursing," and "began shifting his weight from left to right." *Transcript* at 491. Detective Stoops placed Berryhill in handcuffs and escorted him out of the building, at which time he conducted a pat-down search. Detective Stoops testified that he felt a hard object in Berryhill's front pocket and believed that it could have been the handle of a gun, so he retrieved the object. Once the object was removed from Berryhill's pocket, Detective Stoops detected the odor of marijuana. Detective Stoops opened the tin and discovered marijuana. The purpose of the confrontation, Berryhill's demeanor, and Detective Stoops's training and experience all combine to make the minimal intrusion created by the pat-down search a reasonable exercise on Detective Stoops's part. The trial court did not abuse its discretion in admitting evidence pertaining to the seizure of marijuana from Berryhill's person.

3.

Berryhill next argues that the trial court abused its discretion in admitting evidence of his statements to police. Specifically, Berryhill maintains that his statement to Detective Stoops was coerced and therefore inadmissible.

16

The decision whether to admit a defendant's statement is within the discretion of the trial court. *Giles v. State*, 760 N.E.2d 248 (Ind. Ct. App. 2002). Absent an abuse of that discretion, we will not disturb a trial court's decision. *Id.* In determining whether a defendant's statement was given voluntarily, our focus is whether, looking to all of the circumstances, the defendant's statement was free and voluntary and not induced by violence, threats, promises, or other improper influences. *Id.* Our supreme court has provided an open list of factors that may be considered when reviewing the totality of the circumstances for whether a waiver of rights was voluntary, which includes police coercion, the length of the interrogation, its location, its continuity, as well as the defendant's maturity, education, physical condition, and mental health. *State v. Keller*, 845 N.E.2d 154 (Ind. Ct. App. 2006) (citing *Miller v. State*, 770 N.E.2d 763 (Ind. 2002)). It is the State's burden to prove that the defendant's statement was voluntarily given. *Miller v. State*, 770 N.E.2d 763.

Berryhill argues that Detective Stoops "created an atmosphere of coercion" by placing him in an interview room after his arrest for possession of marijuana and then questioning him about the robbery at Little Caesars. *Appellant's Brief* at 21. Berryhill further argues that the "length, continuity, and continually changing location of [Berryhill's] interrogation, combined with [Berryhill] being only nineteen (19) years old at the time of the interrogation, created an environment of police coercion." *Id.* at 22.

We disagree with Berryhill's characterization of the interview process. Nothing in the circumstances surrounding Berryhill's statement indicates that the statement was in any way coerced. To be sure, the record reveals that after Berryhill was arrested for

17

marijuana possession, he was taken to the Avon Police Department and placed in a ten-foot by ten-foot interview room at approximately 3:14 p.m. At 3:23 p.m., Berryhill was read his Miranda rights, which he waived by signing a waiver-of-rights form. Berryhill then proceeded to give his statement to police. During the interview, Detective Stoops took Berryhill out of the interview room and the two drove around in Detective Stoops's vehicle. Detective Stoops made sure Berryhill understood his Miranda rights at all times, and Berryhill voluntarily stayed with Detective Stoops because he wanted to prove his innocence. Berryhill was not in handcuffs when he rode around with Detective Stoops. Berryhill showed Detective Stoops the route Pitamber took with the getaway vehicle. Berryhill also showed Detective Stoops where Pitamber lived and identified the vehicle Pitamber used to flee the scene. At some point, Detective Stoops took Berryhill to McDonald's for dinner. Detective Stoops and Berryhill ended up back at the Avon Police Department where Berryhill finished giving his statement to police around 10:00 p.m. Berryhill was taken to jail at approximately 10:31 p.m. Detective Stoops testified that Berryhill voluntarily stayed with him for the ride-around and that he was "very, very helpful." *Transcript* at 726. Notably, Berryhill never asked for an attorney, seemed to know what was going on at all times, and never indicated to police that they had the wrong person. Moreover, there is nothing in the record showing that Berryhill was less mature than an average eighteen-year-old or that he was confused by the situation or that he suffered from any sort of physical or mental condition that could have affected the voluntariness of his statement. In short, the record is devoid of any indication that

18

Berryhill's statement was coerced. The trial court did not abuse its discretion in admitting Berryhill's statement to police.

4.

Berryhill argues that the evidence is insufficient to sustain his conviction for aiding and abetting in the commission of an armed robbery. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

I.C. § 35-41-2-4 provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense." Further, I.C. § 35-42-5-1 provides:

> A person who knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; or
> (2) by putting any person in fear;
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon . . . .

Thus, to sustain Berryhill's conviction, the State's evidence must have proved beyond a reasonable doubt that Berryhill knowingly or intentionally aided, induced, or caused Pitamber to take property from Little Caesars by using or threatening the use of force while armed with a deadly weapon.

19

In determining whether there was sufficient evidence for purposes of accomplice liability, we consider such factors as: 1) presence at the scene of the crime; 2) companionship with another at the scene of the crime; 3) failure to oppose commission of the crime; and 4) course of conduct before, during, and after occurrence of the crime. *Garland v. State*, 719 N.E.2d 1236 (Ind. 1999). While a defendant's mere presence at the crime scene or lack of opposition to a crime standing alone, is insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Id.* Furthermore, accomplice liability applies to the contemplated offense and all acts that are a probable and natural consequence of the concerted action. *Wieland v. State,* 736 N.E.2d 1198 (Ind. 2000). Finally, it is not necessary for Berryhill to have participated in every element of the crime under a theory of accomplice liability. *Bruno v. State,* 774 N.E.2d 880 (Ind. 2002).

The evidence in the record showed that Berryhill and Pitamber had gone to school together and they lived in the same neighborhood. Berryhill and Pitamber had been good friends up until about a year before the robbery, but their relationship had become mostly dependent upon Berryhill purchasing marijuana from Pitamber. On the night of the robbery, Berryhill was scheduled to work at Little Caesars until closing, but feigned an illness so that he could leave early. Pitamber picked Berryhill up around 9:00 p.m. from a Meijer store close to the Little Caesars. Berryhill and Pitamber then drove to a nearby gas station where they could watch the Little Caesars store. Prior to committing the robbery, Pitamber called Little Caesars and ordered a pizza using a "burn phone" that had only recently been activated. Pitamber then called back using the same phone to say that

20

he would be late picking up the pizza. The phone calls were Berryhill's idea because he knew the procedure would be for the doors to be locked at closing time and that Pitamber would be permitted to arrive after hours and knock on the door to gain entry in order to pick up the pizza.

Berryhill told Pitamber which employees would be working that night and told him where the safe was located. Berryhill was present in Pitamber's vehicle when Pitamber, dressed in a snow suit, brown coat, and ski mask, got out of his car and headed in the direction of the Little Caesars. Before exiting his vehicle, Pitamber grabbed a gun and a baton. Pitamber brandished the gun and baton during the course of the robbery of the Little Caesars. Berryhill was still present in Pitamber's car when Pitamber returned following the robbery. The two drove to Berryhill's home where they split the proceeds from the robbery. Because Pitamber dropped the "burn phone" that had Berryhill's number in it as he fled from the Little Caesars, Berryhill and Pitamber devised a plan that if the police contacted Berryhill, he was going to say that he had called Pitamber "lookin' for some weed or somethin' like that." *Transcript* at 562. Berryhill used his portion of the proceeds to buy clothes, shoes, and some marijuana from Pitamber.

Berryhill's own statement and the testimony of Pitamber corroborate the facts as set forth above. Any discrepancies in the evidence can be explained by Berryhill's desire to conceal his role in the crime. To be sure, in answering a question as to who the "players" were, Berryhill stated that "it's really only two people, that's just me and [Pitamber]." *Id*. at 677. While Berryhill claimed that he was sent home early because business was slow, the surveillance video at the Little Caesars shows Berryhill

21

complaining that he did not feel well and asking to go home. Further, the night of the robbery, just before Berryhill was released to go home, Berryhill contacted Pitamber, but used the *67 option to block his number. When asked about why he did this, Berryhill later claimed that he had tried to call Pitamber to talk him out of the robbery. Finally, Berryhill admitted to talking to Pitamber about robbing the Little Caesars, but claimed that he did not take Pitamber seriously or believe he would go through with it.

The evidence clearly proves each essential element of aiding, inducing, or causing the commission of a robbery. Any inconsistencies in the evidence were matters for the jury to consider in weighing the evidence and judging the credibility of the witnesses. We will not second-guess the jury in this regard. We therefore conclude that the evidence is sufficient to sustain Berryhill's conviction for aiding and abetting in the commission of an armed robbery, a class B felony.

5.

Berryhill challenges the sentence imposed in two respects. First, he argues that the trial court improperly overlooked a mitigating factor. He also argues that his sentence is inappropriate.[6]

Here, the trial court considered Berryhill's age at the time of the crime and his very limited criminal history, i.e., his admitted use of marijuana, to be mitigating circumstances. The trial court also noted that Berryhill was willing to pay restitution and found this to be "somewhat" mitigating. *Transcript* at 1609. The trial court did not find

---

[6] "As our Supreme Court has made clear, inappropriate sentence and abuse of discretion claims are to be analyzed separately." *King v. State,* 894 N.E.2d 265, 267 (Ind. Ct. App. 2008).

any aggravating factors. The trial court sentenced Berryhill to six months on Count II and nine years with three years suspended to probation on Count III, with the sentences to be served concurrently.

We first consider whether the trial court abused its discretion in sentencing Berryhill. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* at 491 (quoting *K.S. v. State,* 849 N.E.2d 538, 544 (Ind. 2006)). A trial court may abuse its sentencing discretion in a number of ways, including omitting mitigating factors that are clearly supported by the record and advanced for consideration. *Anglemyer v. State,* 868 N.E.2d 482. If the trial court abuses its discretion in one of these or another way, remand for resentencing is the appropriate remedy "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

It is true that the trial court did not specifically mention as a mitigating circumstance that Berryhill had a low risk of recidivism. The trial court did, however, note that Berryhill had a minimal criminal history, noting only his admitted use of marijuana, and that he had a family support system. This is akin to a finding of a low risk

of recidivism. We do not find that the trial court abused its discretion in overlooking a significant mitigating circumstance.

We now consider whether Berryhill's sentence is inappropriate. We begin by noting although a trial court may have acted within its lawful discretion in imposing a sentence, article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State,* 905 N.E.2d 57 (Ind. Ct. App. 2009) (citing *Anglemyer v. State,* 868 N.E.2d 482). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Anglemyer v. State,* 868 N.E.2d at 491. Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The appellant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073 (Ind. 2006).

The trial court sentenced Berryhill to an aggregate sentence of nine years with three years suspended to probation. This is less than the advisory sentence of ten years for a class B felony. *See* Ind. Code Ann. § 35-50-2-5 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with

24

effective dates through May 1, 2014) ("A person who commits a Class B felony shall be inprisoned for a fixed term of between six (6) and twenty (20) years, with the advisory sentence being ten (10) years.").

Berryhill argues that his sentence is inappropriate because neither the baton nor gun was used during the robbery to physically harm any of the employees of Little Caesars. While this is true, it is not a fact that weighs heavily on the side of the sentence being inappropriate. Indeed, had the gun or baton been used to physically harm one of the individuals inside the Little Caesars, the crime charged would likely have been elevated to a class A felony.[7] The advisory sentence of ten years is the starting point for a class B felony and that is the class of the crime for which Berryhill was convicted, i.e., aiding or abetting in the commission of a robbery while armed with a deadly weapon. Moreover, we note that Berryhill masterminded the armed robbery at the pizza store at which he worked and thereby endangered the lives of his coworkers. The nature of the offense does not warrant a lesser sentence.

With regard to Berryhill's character, the trial court noted his young age, his lack of criminal history aside from his admitted use of marijuana, and the fact that he has a family support system. The court took these factors into account and imposed a sentence less than the advisory sentence. Berryhill simply believes that these factors warranted a sentence with all or a portion of the executed sentence served on home detention and that he should not have been ordered to serve probation. We do not agree. A sentence of nine

---

[7] The crime of robbery is "a Class A felony if it results in serious bodily injury to any person other than a defendant." I.C. § 35-42-5-1.

years (one year less than the advisory) with three years suspended to probation, is not inappropriate in light of the nature of the offense and the character of this offender.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.